534 So.2d 535 (1988)
STATE of Louisiana
v.
Michael TANNER.
No. 88-KA-390.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 1988.
*536 John M. Mamoulides, Dist. Atty., Johnny Lee, Dorothy A. Pendergast, Asst. Dist. Attys., (Louise Korns, of counsel), Gretna, for plaintiff-appellee.
John B. Donnes, III, Metairie, for defendant-appellant.
Before KLIEBERT, DUFRESNE, and WICKER, JJ.
KLIEBERT, Judge.
The defendant, Michael Tanner, was charged by bill of information with an offense against intellectual property (LSA-R. S. 14:73.2) and simple burglary (LSA-R.S. 14:62). A six-person jury found the defendant guilty on the former charge but was unable to reach a verdict on the latter charge. The defendant was sentenced to one year in parish prison, suspended, and was placed on one year's active probation subject to the conditions that he pay a $500.00 fine, court costs, and a monthly probation supervision fee of $25.00. The defendant appeals and assigns five errors, which we find to be meritless. Hence, defendant's conviction is affirmed and the sentence corrected to give credit for time served and, as corrected, affirmed.
Bill Groome owns Groome Enterprises, Inc., which operates a radio beeper rental business under the name First Page Beeper Service. In organizing the business Groome purchased a state-of-the-art communications business management system produced by D.B.C. Software for the beeper industry. The copyrighted system was based on a modified version of Cosmos/Revelations program and cost approximately $5,000.00. The serial number was 15156. The system tracked inventory, accounts, profits, and losses. In January of 1986 Groome hired Lane Geiger as a bookkeeper. Included in her responsibilities was the routine entry of business data into the data banks. Personnel from D.B.C. Software taught Geiger how to use the communications business management system.
Groome hired Michael Tanner in March of 1986 to act as sales manager of First Page Beeper Service. Approximately two months later Tanner began organizing his own beeper rental company, which was incorporated under the name Advanced Paging Services. Advanced Paging Services entered into a marketing agreement whereby it became an independent, non-exclusive sales and marketing contractor for Groome Enterprises, Inc.'s radio paging services. Several employees of First Page Beeper Service, including Geiger, began working for Advanced Paging Services in August of 1986. Geiger was to set up the computer billing program and act as bookkeeper.
On two occasions, in August and September of 1986, Tanner and Geiger used a key to enter First Page Beeper Services' offices after hours. Geiger made floppy disc copies of the Cosmos/Revelations program. Photocopies were made of the accompanying manuals. Relations between Tanner and Geiger became strained in November of 1986. Geiger approached Groome, informed *537 him about the surreptitious copying of the program, and asked for her old job. Groome notified the police. A warrant search of Advanced Paging Services' offices uncovered the pirate copies of the software program and manuals. Tanner disclaimed any knowledge about the system or how it was obtained by Geiger.
In his first assignment of error defendant contends LSA-R.S. 14:73.2 is unconstitutionally vague and/or misapplied in this case. As defendants did not raise the constitutional argument in the trial court we cannot consider it on this appeal. Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984); 24th Judicial District v. Molaison, 522 So.2d 177 (La. App. 5th Cir.) writ denied 524 So.2d 512 (La.1988). The applicability vel non of the statute questions the sufficiency of evidence and is addressed in later assignments.
In assignment of error number two defendant contends the trial court erred in refusing to suppress the evidence seized pursuant to the search warrant. Defendant contends the warrant is overly broad on its face and that the officers executing the warrant exceeded the scope of the warrant.
The warrant authorized the executing officers to search the business office at 2901 N. Causeway, Suite 302, and to seize "a copy of `Cosmos Revelation' software disc, serial # 15156 on a floppy disc, and other computer related software and copies of computer printouts bearing the name `First Page Beepers.'" Officer Robert Odendahl of the research analysis division of the Jefferson Parish Sheriff's Office assisted in the execution of the warrant. He did not find a software disc of the Cosmos/Revelation program. However, he did find copies of the instruction manuals for the program, and on the hard drive of the computer he found the program software bearing serial # 15156. After making a floppy disc copy of the program Officer Odendahl seized the manuals, the computer keyboard and terminal, and numerous related documents, such as printout and data sheets bearing the name of First Page Beeper Service.
A search warrant should describe with particularity the things to be seized. La. Const. of 1974, Art. I, Sect. 5; La.C.Cr. P. Article 162; State v. Shannon, 472 So. 2d 286 (La.App. 1st Cir.) writ denied 476 So.2d 349 (La.1985). The warrant should be tested in a common sense and realistic manner without technical requirements of elaborate specificity. State v. Huffman, 419 So.2d 458 (La.1982). While in the course of executing a search warrant, a police officer may seize things whether or not described in the warrant that may constitute evidence tending to prove the commission of any offense, and perform all other acts pursuant to his duties. La.C.Cr. P. Article 165; State v. Valovich, 472 So.2d 159 (La.App. 5th Cir.) writ denied 475 So.2d 1103 (La.1985).
Contrary to counsel's contention, authorization for the seizure of "all other computer related software" was tempered by the instruction that it bear the name "First Page Beepers." Thus, the warrant was not overly broad on its face. Moreover, Officer Odendahl did not exceed the common sense scope of the warrant. He would have been remiss in his duty if he did not check the computer hard drive for the Cosmos/Revelation program. Upon performing such a check with a Norton Utilities Program he found software with the serial No. 15156. Thus, the computer, including the hard drive, was subject to seizure, even though not specifically listed in the warrant as an item to be seized.
Assignment of error No. 2 is meritless.
Assignments of error numbers three and four address the sufficiency of the evidence in support of the verdict of guilty of violating LSA-R.S. 14:73.2. In State v. Jacobs, 504 So.2d 817, 820 (La.1987) the court stated:
"[2] An appellate court in Louisiana, reviewing the sufficiency of the evidence to support a conviction, is controlled by the standard enunciated by the Supreme Court of the United States in Jackson v. Virginia, 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] (1979). Under that standard, the appellate court must determine that the evidence, viewed in the light *538 most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.3
When the conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.4 State v. Sutton, 436 So.2d 471 (La.1983)." (Footnotes omitted)
To support a conviction of an offense against intellectual property the state must prove the defendant intentionally destroyed, inserted, modified, disclosed, used, copied, took or accessed, without consent, intellectual property. LSA-R.S. 14:73.2. Intellectual property is defined as data, computer programs, computer software, trade secrets, copyrighted materials, and confidential or proprietary information, in any form or medium, when such is stored in, produced by, or intended for use or storage with or in a computer, a computer system, or a computer network. LSA-R.S. 14:73.1.(9). All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals. LSA-R.S. 14:24.
The evidence offered by the state in support of the conviction was substantial. Copies of the programs, manuals and software bearing serial number 15156 were found in the offices of Advanced Paging Services. Neither Bill Groome nor his operations manager, Mary Condon, authorized anyone to copy the Cosmos/Revelations program. Lane Geiger admitted she copied the program at Tanner's request after he promised to pay her $1200.00 per month to work as bookkeeper for Advanced Paging Services. According to Geiger, she, Tanner, and Victor Bergeron entered First Page Beeper Service's offices in August of 1986 with a key supplied by Tanner. While Bergeron took pictures of paging systems for a training film being prepared by Tanner, Geiger made floppy disc copies of the Cosmos/Revelations program. Tanner "rummaged" around for information on accounts and proposals. Tanner and Geiger made a second entry in September of 1986 in order that additional copies could be made. Geiger downloaded the program onto the Advanced Paging Services' computer and, after printing out a master list of accounts, began deleting data entries in order that the files could be restarted at zero. It was during this period of time that Geiger approached Groome and informed him of the events at issue.
According to Tanner, Geiger offered to set up a computer billing system and act as bookkeeper for a salary of $1200.00 per month. Geiger was delegated the responsibility for the computer. Tanner disclaimed any knowledge about the program. He admitted he went to First Page Beeper Service's offices on two occasions with Geiger but claimed he did not know she was copying the Cosmos/Revelations system. He thought she was tying up loose ends with First Page Beeper Service. Tanner claimed that he found out about the Cosmos/Revelations program in September of 1986 and immediately called a computer consultant, Briant Manix, to erase the program. However, Manix testified that Tanner asked him to purge the data entries from the program, not the program itself. The program was still on the computer when the search warrant was executed in December of 1986.
Considered in the light most favorable to the prosecution, the evidence is sufficient to convince a rational trier of fact beyond a reasonable doubt that the defendant was a principal to an offense against intellectual property. The fact that the jury was unable to reach a verdict on the burglary charge has no bearing on our determination *539 of the sufficiency of the evidence supporting the intellectual property conviction, for the infinite number of possible reasons for the jury's inability to reach a verdict reduces any attempt at rationalization to sheer speculation.
These assignments of error are meritless.
In his fifth and final assignment of error, defendant contends the court erred in failing to grant a new trial based on evidence that witnesses under sequestration had discussed the case among themselves during trial. Two of the defense witnesses called at trial, Wendy Simmons and Briant Manix, testified at the hearing on a motion for a new trial that Lane Geiger, who was the last prosecution witness to testify, approached other prosecution witnesses as they left the courtroom and asked them about the case. Neither Simmons or Manix reported the incidents to the bailiff, attorneys, or judge. The court was very suspect of the belated reports of sequestration violations and hence denied the motion for a new trial.
Faced with a similar scenario in State v. Sharp, 338 So.2d 654, 659 (La.1976) the court stated:
"[7,8] The state properly observes that a motion for new trial must rest upon a finding of prejudice to the accused (see C.Cr.P. art. 851) and they contend that noncompliance in this instance was not shown to have resulted in such prejudice. Had violation of the sequestration order by a prospective witness been brought to the court's attention prior to presentation of his testimony, the trial judge would have been permitted in his discretion to allow such witness to testify notwithstanding noncompliance. State v. Lewis, 288 So.2d 324 (La.1974); State v. Browning, 290 So.2d 322 (La. 1974).
In the instant case noncompliance with the sequestration order was shown post-trial by evidence presented in connection with the motion for a new trial. The trial judge has no less discretion in this situation."
We discern no abuse of the trial court's discretion nor error of law in the ruling on the motion for a new trial.
This assignment of error is meritless.
We have also reviewed the record for errors patent on its face, as authorized by LSA-C.Cr.P. Article 920. We have found an error detrimental to the defendant; he was not given credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence, as required by La.C.Cr.P. Article 880. We correct the sentence to allow the defendant credit for time served. La.C.Cr.P. Article 882; State v. Issac, 527 So.2d 1045 (La. App. 5th Cir.1988).
Accordingly, we affirm the conviction and amend the sentence to provide for credit for time served and, as amended, affirm the sentence.
CONVICTION AFFIRMED; SENTENCE CORRECTED AND, AS CORRECTED, AFFIRMED.