624 So.2d 436 (1993)
STATE of Louisiana
v.
Guy LIONS.
No. 92-KA-1087.
Court of Appeal of Louisiana, Fifth Circuit.
September 15, 1993.
Julie E. Cullen, Asst. Atty. Gen., Baton Rouge, for plaintiff-appellee.
Arthur Harris, New Orleans, for defendant-appellant.
Before BOWES, GAUDIN and WICKER, JJ.
GAUDIN, Judge.
Guy Lions was convicted by a St. James Parish jury of possession with intent to distribute heroin, cocaine, methylenedioxymethamphetamine *437 (MDMA), marijuana and methamphetamine in violation of LSA-R.S. 40:966 and 40:967. He was sentenced on June 26, 1992 to serve 240 months at hard labor on the heroin and MDMA counts, 84 months at hard labor on the cocaine and methamphetamine counts and 46 months at hard labor on the marijuana count.
On appeal, Lions argues that the district judge erred:
(1) in denying his motion to suppress evidence and his statement,
(2) in denying his motion for a mistrial,
(3) in allowing a police officer to testify on the issue of ultimate guilt and
(4) in imposing illegal sentences.
Our examination of this record shows no reversible error; accordingly, Lions' convictions are affirmed. His sentences are affirmed with this amendment: the 240-month sentence (20 years) for attempted possession with intent to distribute MDMA is reduced to 15 years at hard labor, the maximum statutory penalty allowable for this offense.

ASSIGNMENT NO. 1
In this assignment of error, Lions contends that the trial judge erred in denying the two motions (to suppress evidence and his statement) because of five separate reasons: (a) the initial stop was defective as there were no traffic violations, (b) his freedom of movement was unlawfully intruded on, (c) he was illegally detained, (d) his consent was not free and voluntary and (e) there was police coercion.
On March 8, 1990, deputy Craig Poche of St. James Parish was on patrol on highway 3125, which has only two lanes. He testified that he saw a blue 1986 Toyota van pass "a little red car" by driving onto the shoulder of the roadway. Poche stopped the van for obvious improper passing. The van's driver was Lawrence Orbeck. Lions was in the right front passenger seat. Shortly after the traffic stop, another police car occupied by deputies Dale Roussel and Jonathan Werner arrived.
Poche was speaking with Orbeck, who had exited the van, when Roussel and Werner arrived. Orbeck went to the passenger side to obtain registration and insurance papers from the glove compartment. At that time, Lions got out of the van, Poche said, and almost immediately he (Lions) and Werner "... were in a ditch, wrestling in a ditch."
Poche told Roussel to watch Orbeck when he (Poche) went to help Werner. Poche said he saw Lions throw a plastic bag, containing a white substance, "... away from where he was inside the ditch." Lions was subdued and the plastic bag recovered.
Another plastic bag, containing a white and green substance, was in clear view on the floor of the van. This bag was recovered by Roussel. Werner testified that when Lions got out of the van he (Werner) saw the plastic bag containing a white substance "... sticking out of his (Lions') pocket." Werner said that Lions then used profane words and "... took off running." Werner, according to his testimony, had not physically touched Lions or in any way attempted to detain him. Werner gave chase and quickly caught Lions. A struggle ensued. During the scuffle, Lions tried to dispose of the plastic bag by tossing it away.
Roussel later contacted special agent Tommy Johnson of the federal Drug Enforcement Administration. Johnson testified that he went to St. James Parish and spoke with Lions. Johnson said that he advised Lions of his Miranda rights and later read these rights to Lions from a consent form. Lions signed a consent form allowing a search of his home in St. John the Baptist Parish conditioned on Werner and Roussel not participating in the search. In addition, Lions told Johnson that a Mexican had supplied him with the narcotics but that Orbeck was unaware of any illegal activity. The search of Lions' home produced $18,000.00 in cash and a scale.
Forensic tests of the seized substance revealed that the bags contained 33.03 grams of marijuana, 228.74 grams of methamphetamine, 29.68 grams of cocaine, 2.02 grams of heroin with a 7.93% purity and 4.25 grams of heroin with a 16.30% purity.
Lions contends that there were paved portions of the roadway on either side of the two regular traffic lanes and that *438 Orbeck swerved to his right to avoid running into another vehicle. Poche's testimony contradicts this argument. The trial judge accepted as credible the statements of the police officers and found that a moving traffic violation had occurred and that the officers acted reasonably and legally once the van was stopped. Further, the trial judge found that Lions was not threatened, intimidated or harassed. The record does not suggest police coercion either on the highway after the stop or later.
Johnson did tell Lions that if he cooperated in the investigation, he (Johnson) would make this known to authorities. The mere fact that a police officer tells a person in custody that prosecutors will be advised of any cooperation is not sufficient inducement to vitiate the free and voluntary nature of any statement or consent to search. See State v. Jackson, 414 So.2d 310 (La.1982), and State v. Vernon, 385 So.2d 200 (1980).
Lions was not promised leniency or anything else not delivered. Johnson was asked if he told the St. James Parish officials that Lions had been cooperative. Johnson said: "Yes, I did."
There is no substance in this assignment of merit. The record fully supports the trial judge's denial of Lions' motions to suppress.

ASSIGNMENT NO. 2
During Johnson's testimony, he was asked: "Did he (Lions) give you a particular location where he had gotten the drugs?" Johnson replied:
"Well, he said this guy, the Mexican would come to town, place a phone call to him, let him know he was in town, and then he would go and meet with the Mexican. At that time he would let him know the quantity of drugs that he needed."
Lions' attorney moved for a mistrial, saying that he was caught by surprise and that Johnson's answer constituted impermissible evidence of other crimes; i.e., that Lions had an ongoing relationship with a Mexican drug supplier. The trial judge denied the motion for a mistrial. Appellant says the denial was erroneous. We cannot agree.
The state gave notice prior to its opening statement, in accord with LSA-C.Cr.P. art. 768, that Johnson would testify about Lions' admissions concerning the source of the narcotics. Johnson's response to the question, however, did go beyond what that question called for.
According to LSA-C.Cr.P. art. 770, a mistrial shall be ordered when a remark or comment made by a judge, district attorney or court official refers, directly or indirectly, to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. Johnson, however, was not a judge, district attorney or court official. LSA-C.Cr.P. art. 771 states:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial." (Underlining provided.)
In State v. Harris, 383 So.2d 1 (La.1980), the Supreme Court of Louisiana said at page 9:
"This Court has generally recognized that a police officer's unsolicited, unresponsive reference to another crime by the defendant is not the comment of a court official under Article 770. Absent a showing of a pattern of unresponsive answers or improper intent by the police officer or prosecutor such comments would not fall within *439 the purview of Article 770. State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Hammontree, 363 So.2d 1364 (La.1978); State v. Martin, 376 So.2d 300 (La.1979). A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to the defendant sufficient to deprive him of a fair trial. State v. Williams, 375 So.2d 364 (La.1979), State v. Heads, 370 So.2d 564 (La.1979)."
In State v. Mayer, 589 So.2d 1145 (La.App. 5 Cir.1991), this Court stated at page 1151:
"A direct or indirect reference to another crime committed or alleged to have been committed by defendant, as to which evidence would not be admissible, made within the hearing of the jury by the judge, district attorney or a court official, during trial or in argument, would require a mistrial on motion of defendant. LSA-C.Cr.P. art. 770(2). However, a state witness is not a court official for purposes of LSA-C.Cr.P. art. 770; therefore, art. 770 does not apply. When the remark is made by someone other than the judge, district attorney, or other court official, such as is the case here, the proper remedy is outlined in LSA-C.Cr.P. art. 771. That article provides that a mistrial is discretionary with the trial court and should be granted only where the prejudicial remarks of the witness made is impossible for the defendant to obtain a fair trial. Mistrial is a drastic remedy which is only authorized where substantial prejudice will otherwise result to the accused. State v. Smith, 418 So.2d 515, 522 (La.1982)."
Here, the trial judge could have granted a mistrial had he concluded that Johnson's response made it impossible for Lions to obtain a fair trial. Rather than grant a mistrial, the trial judge admonished Johnson and the jury and proceeded with the trial. The record does not reveal either a pattern of unresponsive answers or that Johnson's intent was improper. Equally important, there was no showing of prejudice sufficient to deprive Lions of a fair hearing.

ASSIGNMENT NO. 3
In this assignment of error, Lions complains because New Orleans Police Department detective Ronnie Austin, appearing as an expert in the field of packaging and distributing drugs at both the street and wholesale levels, testified as to the issue of ultimate guilt.
Austin, who was qualified as an expert without defense objection, answered a series of hypothetical questions about the amount of drugs usually associated with personal use and the amount normally associated with sales and distribution. Such information is not in common knowledge. Jurors can be aided by experts in this regard.
In State v. White, 450 So.2d 648 (La.1984), a drug distribution conviction was reversed because the expert police officer did testify directly about the defendant's guilt and did thereby usurp the jury's function as finders of facts. The Supreme Court spelled out these guidelines at page 650:
"Clearly, an expert in drug distribution can give his opinion as to practices about which the average juror would have no competence. Earlier in his testimony, Officer Peralta testified that possession of twenty-five foils of heroin was generally considered a wholesale amount of heroin. Trans., p. 57. This was permissible opinion testimony, since knowledge of the amount of heroin usually used or possessed for personal consumption as distinguished from amounts possessed for sale or distribution was not a fact within the knowledge of the average individual.
"On the other hand, the ultimate issue of the defendant's guilt is not a question reserved for an expert witness."
Austin, in the instant case, was questioned within these guidelines. He was not asked to express an opinion regarding Lions' guilt. Admittedly, the line is thin, but Austin did not testify on the issue of ultimate guilt and he did not infringe on the jury's fact-finding function.

ASSIGNMENT NO. 4
In this final assignment of error, Lions protests because the trial judge did not adequately state for the record his reasons for imposing the lengthy hard labor sentence. Lions did not file in district court a motion to reconsider his sentence as required by LSA-C.Cr.P. *440 art. 881.1(D); accordingly, this Court is precluded from considering this issue on appeal.
This Court can correct a sentence illegally excessive. Lions was sentenced to 20 years at hard labor for attempted possession with intent to distribute MDMA. The maximum for this offense is 15 years. Lions' sentence is ordered amended (reduced) to 15 years for attempted possession with intent to distribute MDMA. Otherwise, Lions' convictions and sentences are affirmed.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED AS AMENDED.