868 So.2d 704 (2003)
STATE of Louisiana
v.
Lionel REDDITT.
No. 03-KA-0354.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2003.
*705 Paul D. Connick, Jr., District Attorney, Margaret E. Hay, Terry M. Boudreaux, Frank Brindisi, Vincent Paciera, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Prentice L. White, Louisiana Appellate Project, Baton Rouge, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and THOMAS F. DALEY.
SOL GOTHARD, Judge.
Defendant, Lionel Redditt, appeals his conviction and sentence in this criminal appeal. For reasons that follow, we affirm.
The record shows that, on May 16, 2001, the Jefferson Parish District Attorney's Office filed a bill of information charging defendant, Lionel Redditt, along with Prescott Smith, with one count of second degree kidnapping in violation of La. R.S. 14:44.1, and one count of armed robbery in violation of La. R.S. 14:64[1]. On May 18, 2001, defendant was arraigned and entered a plea of not guilty to the charges. After preliminary rulings on various motions, defendant proceeded to a jury trial.
After a two-day trial in May 2002, a 12person jury found the defendant guilty as charged on both counts. Thereafter, on June 13, 2002, defendant was sentenced to 40 years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence as to count one, second degree kidnapping, and 50 years of imprisonment at hard labor without benefit of parole, probation, or suspension as to count two, armed robbery. The trial court ordered the sentences to run concurrently.
On November 21, 2002, the State filed a habitual offender bill of information alleging defendant to be a third felony offender. On January 16, 2003, after the denial of a defense motion to quash the habitual offender bill of information, the court held a habitual offender hearing and *706 found defendant to be a second felony offender[2]. Thereafter, the trial court vacated defendant's original sentence as to count two, armed robbery, and re-sentenced defendant to 198 years at hard labor without the benefit of probation, parole, or suspension of sentence to run concurrently with his 40-year sentence on count one in the original bill of information. On January 22, 2002, the defendant filed a motion to reconsider sentence, which was denied on February 11, 2002. Defendant, thereafter, filed a timely motion for appeal.

FACTS
The victim, Raion Hill, testified that, on January 22, 2001, after leaving his girlfriend's home, he proceeded to the Rhythm City Nightclub in New Orleans. After staying five or ten minutes, the victim and a female acquaintance, exited the club and walked back to the victim's vehicle. Before driving away from the parking lot of the club, the victim observed defendant[3] pointing at the vehicle. Thereafter, the victim and his friend drove to Denny's Restaurant in Gretna near the Oakwood Mall. After getting his food order, the victim exited the restaurant by himself and made his way to his vehicle, at which time he was approached by two men, one of whom was the defendant herein. The other individual, Prescott Smith, put a gun to the victim's side and forced him into the rear seat of his own vehicle. Defendant got into the driver's seat of the vehicle, while Smith joined the victim in the back seat.
Defendant drove away from the restaurant and proceeded towards New Orleans. After driving through the toll plaza, Smith and defendant switched seats and Smith drove to New Orleans, exited at Claiborne Avenue, and drove to an Automated Teller Machine (ATM) on Elysian Fields. At the ATM defendant and Smith attempted to withdraw cash, but were unable to do so because the victim could not remember his personal identification number. Thereafter, defendant and Smith dropped the victim off near Brother Martin High School, taking the vehicle. The victim called the police from a nearby payphone and relayed the events that occurred.
Officer Scott DeJong testified that he was employed by the Jefferson Parish Sheriff's Office in January of 2001, and conducted an investigation into the robbery of Mr. Hill. As a result of his investigation, he interviewed the victim and obtained a description of the perpetrators. The victim was also able to give a description of defendant to a composite sketch artist and a sketch was rendered. Subsequently, Officer DeJong was able to develop defendant as a possible suspect in the case. A photographic lineup containing defendant's photograph was compiled and shown to the victim. The victim made a positive identification and defendant was later arrested.
Officer DeJong, after advising defendant of his constitutional rights and obtaining a waiver of those rights, obtained two separate statements from defendant in which defendant indicated his involvement in the crimes. Defendant also indicated that the gun used in the robbery could be found at 1308 Tupelo Street in New Orleans. At the request of Officer DeJong, Detective *707 Darrell Doucette of the New Orleans Police Department (N.O.P.D.) obtained a search warrant.
Detective Kevin Decker of the Jefferson Parish Sheriff's Office testified he was present during defendant's first two statements given to Officer DeJong, and subsequently obtained a third statement from the defendant in which defendant identified certain individuals connected to the robbery from photographic lineups. Detective Decker also assisted in the execution of the search warrant and testified that various items belonging to defendant were seized from the Tupelo Street address. Defendant was subsequently charged with the crimes in the bill of information.

LAW
In brief to this Court defendant assigns three errors for our review. In the first, defendant argues the trial court erred in denying a defense motion to suppress a statement made to investigating officers. Specifically, defendant argues, the motion to suppress should have been granted because the investigating officer conceded that he knowingly questioned the defendant while the defendant was already heavily intoxicated and further, made promises to this defendant in exchange for a statement that incriminated defendant and another individual. Defendant asserts that at the time of the statements, he was highly intoxicated. Defendant also argues that the investigating officers' promises of a favorable outcome if he cooperated were coercive and rendered his statements involuntary.
The State responds that there was no evidence defendant was intoxicated at the time of his statements, or that the officers' statements were sufficient inducements to render defendant's statements inadmissible.
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his constitutional rights and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement or promises. La. R.S. 15:451; State v. Comeaux, 9327296 (La.7/1/97), 699 So.2d 16, 29, cert. denied, 522 U.S. 1150, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998).
A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstances of each situation. State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866; State v. Watts, 98-1073 (La.App. 5 Cir. 5/19/99), 735 So.2d 866, 869. The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. Id. Intoxication renders a confession involuntary when the intoxication is of such a degree as to negate the defendant's comprehension and to make him unconscious of the consequences of what he is saying. State v. Narcisse, 426 So.2d 118, 125 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); State v. Quest supra, at 780. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact; a trial judge's conclusions on this issue will not be disturbed unless unsupported by the evidence. State v. Quest, supra, at 780.
At the hearing on the motion to suppress, defendant testified that, on the day *708 of his arrest, he had been "shooting" heroin and had been "shooting it" for the previous three days. He maintained that five to ten minutes after "shooting up" he was arrested and taken to the New Orleans Police Fifth District Station. Defendant recalled being driven to the station by a uniformed New Orleans police officer in an unmarked car; however, he claimed that he did not remember being questioned at the station.
Officer DeJong and Detective Decker testified that they obtained three statements from defendant. Prior to taking the statements, Officer DeJong advised defendant of his constitutional rights via a "RIGHTS OF ARRESTEE OF SUSPECTS" form and obtained a signed waiver of those rights from defendant. Thereafter, Officer DeJong questioned defendant as to whether he had taken any drugs to which defendant responded he had taken some drugs earlier in the day. Officer DeJong did not recall what type of drugs defendant stated he had taken. However, both Officer DeJong and Detective Decker testified that defendant did not appear to be under the influence of any drugs at the time of his statements. Officer DeJong testified that defendant's eyes were not blurry, and his speech was not slurred. Detective Decker testified defendant appeared cognizant of his surroundings and the procedures taking place.
In denying the motion to suppress the trial court stated the following:
The Court finds it rather interesting, bordering on remarkable how this Defendant's memory of details leading up until the moment he begins his Statement is rather detailed, plain and straightforward. And yet, as if he had an out-of-body experience, he remembers nothing of the Statements he gave.
The Court rejects any notion that we have to accept, in the form of Judicial Note, the mere fact that someone inculpates himself, he must be out of his mind. We don't accept that on that basis....
Based on the evidence in the record, we do not find the defendant's intoxication was sufficient to vitiate the voluntariness of his statements. Both officers testified that defendant did not show any signs of intoxication. Furthermore, the trial court apparently discounted defendant's testimony concerning his level of intoxication. Therefore, the trial court did not err in denying defendant's motion to suppress defendant's statements on the basis of intoxication.
Defendant also contends that his statements were involuntary because investigating officers made promises to him in exchange for the statements. In the instant case, both Officer DeJong and Detective Decker testified that they informed defendant that if he cooperated, his cooperation would be forwarded to the district attorney's office. However, the mere fact that a police officer tells a person in custody that prosecutors will be advised of any cooperation is not sufficient inducement to vitiate the free and voluntary nature of any statement. See, State v. Jackson, 414 So.2d 310, 312-313 (La.1982); State v. Matthews, 26,550 (La.App. 2 Cir. 12/21/94), 649 So.2d 1022, writ denied, 95-0435 (La.6/12/95), 655 So.2d 341; State v. Lions, 624 So.2d 436, 438 (La.App. 5 Cir. 1993).
Accordingly, we find that the trial court did not err in denying the defendant's motions to suppress statements on this basis. This assignment of error is without merit.
In the second assignment of error, the defendant asserts the district court erred in failing to suppress items that were not listed on the search warrant.
*709 Defendant argues that the trial court erred in not suppressing the warrant because the executing officer did not have personal knowledge of the investigation and, as a result, the issuing magistrate could not have had a reasonable belief in the validity of the warrant.
The State responds that the fact that information contained in the affidavit supporting the warrant is not completely based on personal knowledge of the affiant does not render the warrant invalid.
In order to be valid, "a search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant." La.C.Cr.P. art. 162. "Probable cause consists of facts and circumstances sufficient to support a reasonable belief that an offense has been committed and that evidence of the crime or contraband may be found at the place to be searched. These facts and circumstances must be within the affiant's knowledge and based upon reasonably trustworthy information." State v. Fedrick, 614 So.2d 723, 724 (La.App. 5 Cir.1993); State v. Boyd, 94-641 (La.App. 5 Cir. 12/28/94), 649 So.2d 80; State v. Bourg, 470 So.2d 291 (La.App. 5 Cir.1985), writ denied 475 So.2d 354 (La.1985).
In the instant case, Officer DeJong learned through his interview with defendant that Smith had given the gun used in the crimes to an individual named Byron who resided at 1308 Tupelo Street in New Orleans. Thereafter, Officer DeJong and Detective Decker sought the assistance of N.O.P.D. Detective Darrell Doucette in obtaining a search warrant in order to retrieve the handgun. On the search warrant application, Detective Doucette, the affiant, set forth the following facts:
Jefferson Parish investigators arrested defendant, who gave a taped statement in which he implicated himself in the crimes; defendant also informed investigators that the handgun used in the crimes was given to an individual named Byron located at 1308 Tupelo Street; and a computer search revealed that an individual by the name of Byron Green resided at that address.
The fact that the information contained in the affidavit supporting the application for the search warrant was not completely based on the personal knowledge of the attesting officer, but on what he had been told by others, is no bar to finding the warrant valid. State v. Duncan, 420 So.2d 1105, 1109 (La.1982). While Detective Doucette did not have personal knowledge of the information in the warrant application, he had been informed by Jefferson Parish investigators who had obtained the information directly from defendant via a taped statement. Additionally, as shown in the warrant application affidavit, Detective Doucette verified the information by conducting a computer search which indicated that an individual by the name of Byron Green resided at the 1308 Tupelo Street address.
Based on the foregoing, we find that Detective Doucette's warrant application was based on trustworthy information and therefore, the trial court did not err in finding probable cause to support the warrant.
Defendant also contends that the trial court erred in not suppressing items seized in the execution of the search warrant because the items were not listed in the search warrant and the gun was not found. The State responds that, although the items were not listed in the search warrant, they were properly seized because they were in "plain view."
A search warrant should describe with particularity the items to be seized. La. *710 Const. of 1974, art. I, § 5; La.C.Cr.P. art. 162. The warrant should be tested in a common sense and realistic manner without technical requirements of elaborate specificity. State v. Huffman, 419 So.2d 458 (La.1982); State v. Jackson, 97-1246 (La.App. 5 Cir. 4/13/98), 712 So.2d 934, 936, writ denied, 98-1454 (La.10/16/98), 726 So.2d 37. While in the course of executing a search warrant, a police officer may seize things, whether or not they are described in the warrant, which may constitute evidence tending to prove the commission of any offense, and perform all other acts pursuant to his duties. La. C.Cr.P. art. 165, State v. Tanner, 534 So.2d 535 (La.App. 5 Cir.1988); State v. Jackson, supra, 712 So.2d at 936. It is axiomatic that such a seizure is described in search and seizure terms as being based on the "plain view" doctrine. Jackson, supra, at 936; State v. Davis, supra.
In the instant case, Detective Doucette, along with members of the N.O.P.D., Officer DeJong, and Detective Decker, entered the home pursuant to a valid search warrant. Detective Doucette testified that, in the course of executing the search warrant, Officer DeJong informed him that several items located in the home had been taken from Hill's vehicle. Therefore, the incriminating character of the items became immediately apparent to Detective Doucette, and, therefore, the items were properly seized. Additionally, the fact that the hand gun listed in the warrant was not found does not invalidate the warrant. See, Maryland v. Garrison, 480 U.S. 79, 85, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 81 1987). (Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued).
Based on the foregoing, we find no error in the ruling of the trial court denying defendant's motion to suppress evidence. This assignment is without merit.
In his final assignment of error, defendant argues the 198-year sentence was excessive in light of the fact that it was grossly disproportionate to the offense and nothing more than the needless imposition of pain. Defendant argues that imposing the maximum 198-year sentence is excessive in light of other sentences given to like defendants in similar cases.
The State responds that defendant failed to show an abuse of the discretion afforded to the trial judge in sentencing him within the legislatively set sentencing limits.
Defendant was found guilty of armed robbery in violation of La. R.S. 14:64 and was adjudicated a second felony offender. At the time of the commission of the present offense, the sentencing range for a second felony offender, with an underlying conviction for a violation of La. R.S. 14:64, armed robbery, punishable by imprisonment for not more than 198 years and not less than 49½ years, without benefit of parole, probation, or suspension of sentence. La. R.S. 15:529.1(A)(1)(a). Defendant was sentenced to 198 years of imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. Therefore, defendant received the maximum sentence under the Habitual Offender Law.
The United States and Louisiana Constitutions both prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. art. I, § 20. Even a sentence within the prescribed statutory limit may violate a defendant's constitutional right against excessive punishment. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Jones, 98-1055 (La. App. 5 Cir. 2/23/99), 729 So.2d 95. In reviewing a sentence for excessiveness, the appellate court must consider the punishment in light of the harm to society and *711 gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Daigle, 96-782 (La.App. 5 Cir. 1/28/97), 688 So.2d 158, 159, writ denied, 97-0597 (La.11/5/97), 700 So.2d 506.
Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. State v. Quebedeaux, 424 So.2d 1009 (La.1982), aff'd on remand, 446 So.2d 1210 (La.1984). However, the trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Jones, 98-1055 (La.App. 5 Cir. 2/23/99), 729 So.2d 95. This Court should further consider three factors in reviewing a judge's sentencing discretion; 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Telsee, 425 So.2d 1251 (La.1983); State v. Slang, 94-332 (La.App. 5 Cir. 11/16/94), 646 So.2d 1037, 1041.
In State v. Freeman, 00-238 (La.App. 3 Cir. 10/11/00), 770 So.2d 482, writ denied, 00-3101 (La.10/5/01), 798 So.2d 963, a defendant received a 198-year sentence as a second felony offender convicted of armed robbery. The Third Circuit in upholding the sentence noted that defendant threatened to kill the grocery store manager while pointing a laser-sighted pistol at her. The court also noted the disabling psychological effect on the victim, which caused her to be unable to work. Also, in State v. Doleman, 02-0957 (La.App. 4 Cir. 12/4/02), 835 So.2d 850, the defendant, a second felony offender convicted of armed robbery, was sentenced to a 198-year term of imprisonment. In upholding the sentence, the Fourth Circuit noted that, during the robbery, defendant threatened to kill employees while holding a sawed off shotgun to the face of the store manager.
As noted by the trial judge in his reasons for sentence at defendant's original sentencing and similar to the cases in Freeman and Doleman, defendant used a dangerous weapon in the commission of the crime and repeatedly threatened to kill the victim, creating the risk of death and bodily harm. The trial judge additionally noted defendant's lack of remorse for his crimes. Therefore, based on the facts in the instant case and factually similar cases in the case law, we do not find that defendant's 198-year sentence is unconstitutionally excessive.
For the reasons discussed herein, we find no merit in defendant's appeal and we affirm the convictions and sentences.
AFFIRMED.
NOTES
[1] A severance was granted and defendants were tried separately. This appeal only addresses defendant, Lionel Redditt's conviction.
[2] Prior to the habitual offender hearing, the State submitted that the defendant could only be billed as a second felony offender because one of his prior convictions occurred after his arrest for the instant offenses.
[3] During the investigation, the victim positively identified defendant and Prescott Smith after being shown a photographic lineup. Furthermore, defendant admitted to his involvement in his statements to Officer DeJong and Detective Decker.