Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
| ?Defendant/appellant, Wynn S. Jones, Jr. (“Jones”), appeals his conviction on four counts of armed robbery, one count of simple robbery, and one count of attempted simple robbery. We affirm his convictions and remand with instructions.
Jones entered a plea of not guilty and filed several pre-trial motions, including motions to suppress his confession, evidence, and identification, all of |swhich were denied after a hearing. Prior to trial, Jones withdrew his not guilty plea and entered a plea of guilty pursuant to North Carolina v. Alford[1] and State v. Crosby.[2] On counts one through four, Jones was sentenced to 49 years of imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Additionally, he was sentenced to seven years of imprisonment at hard labor on count five and three years and six months of imprisonment at hard labor on count six. The court ordered all sentences to run concurrently.
The following facts are taken from the suppression hearing: Detective Dax Russo (“Detective Russo”) of the Jefferson Parish Sheriffs Office participated in an investigation regarding a series of robberies *23 that occurred from December 2004 until January 19, 2005. Jones was arrested on January 19 for a robbery of a cellular telephone business, NEXTECH, that had occurred that day. A search incident to an arrest was conducted, and, as a result of the search, Detective Russo received a 20 dollar bill, a nine millimeter live cartridge, a pay-out stub for NEXTECH, and a roll of coins, which was consistent with items taken in the robbery.
On the day Jones was arrested, Detective Russo advised him of his rights and Jones signed a waiver of rights form, acknowledging he understood his rights. Two recorded statements were taken, one at 7:50 p.m. and the second at 8:34 p.m. that same evening. At the beginning of his first statement, Jones acknowledged he understood his rights and was waiving them. At the beginning of his second statement, Jones was reminded of his rights and acknowledged that he again was waiving them. Detective Russo testified that Jones was not forced or coerced or promised anything of value for his statements.
UAccording to Detective Russo, the first statement concerned the NEXTECH robbery while the second statement concerned other robberies that occurred from December 2004 until January 19, 2005 on the Westbank. The statements were admitted into evidence. In his first statement, Jones admitted he received money from the register after he grabbed an employee by her arm and put a kitchen knife to her throat during the robbery. In his second statement, Jones admitted he robbed a cashier at Philly’s Steak House with a knife and was given money from the cash register. He then admitted that, on another occasion, he robbed a different employee at the Philly’s Steak House using the same knife and that he took money out of the register himself. Jones then stated he robbed a gas station on the Expressway, snatching money from the register while unarmed. He also discussed two other robberies at gas stations. He explained that, in one attempt, he tried reaching into the register after purchasing a drink at a Shell Station on the Expressway, but the employee closed the register, grabbed a baseball bat, and ran him out of the store. He did not get any money and was unarmed. Jones then discussed a second robbery on the same day at a Shell Station on Ames and Lapalco. He explained that he asked the employee for change for his dollar to use the phone, and, when the cashier tried to give him change, he reached and grabbed the money. He stated that he showed the cashier a knife, and she backed up. Jones identified himself as the person shown in photographs, taken from surveillance video, given him by the detective.
Detective Russo testified that, as to the NEXTECH robbery, three employees gave an account of what happened and were taken to the scene where Jones was apprehended. All three employees identified him as the suspect. Regarding the other robberies that occurred prior to January 19, photographic line-ups that included Jones’ photograph were used. Detective Russo testified that Julia |fiMartin identified Jones from a photographic lineup as the suspect in the January 14, 2005 robbery of the Shell Gas Station on Lapal-co Boulevard. Rosie Johnson identified Jones in a photographic line-up as the suspect in a January 14, 2005 robbery at the Shell Gas Station on the Westbank Expressway.
Detective Kevin Decker of the Jefferson Parish Sheriffs Office also participated in the investigation of the robberies. He testified that he showed a photographic lineup to victim Carl Howell and witness Henry Diamond regarding a December 22, 2004 *24 robbery at Philly’s Steak House on the Westbank Expressway. Separately, both identified Jones in a photographic lineup. With regard to a January 9, 2005 robbery at the Shell Gas Station on the Westbank Expressway, Haroon Iqbal identified Jones in a photographic lineup. In both of these robberies, a still photograph from the surveillance video was available.
On appeal, counsel for Jones argues his statements were given involuntarily because he was under the influence of heroin and cocaine, and also because, after he resisted arrest (but prior to questioning), he was intimidated and manhandled by the police, causing injuries that had to be treated at Charity Hospital. Jones urges that he was in no physical condition to comprehend the seriousness of the charges and waiver of rights, and, thus, had a diminished capacity to fully understand either his rights and/or their waiver. He argues he did not knowingly, intelligently, and voluntarily enter his pleas with a full understanding of the pleas and their consequences. Jones urges that he received ineffective assistance of counsel when his attorney failed to object to the admission of his statements during the suppression hearing, making his guilty pleas invalid as being coerced.
Jones also makes a pro se argument that his attorney was ineffective in failing to object to the trial court’s acceptance of his plea under Alford without | ^ascertaining that he had a full understanding of the elements of the crime, and that there was no factual basis established in the record to support such plea.
Although a guilty plea normally waives all non-jurisdictional defects in the proceedings leading up to the plea and precludes review of such defects either by appeal or post-conviction relief, a defendant may be allowed appellate review if at the time he enters a guilty plea, he expressly reserves his right to appeal a specific adverse ruling in the case.[3] To the extent that Jones entered his guilty pleas pursuant to Crosby, he did not specify the pre-trial ruling he wished to reserve for appeal. Neither the waiver of rights form nor the plea colloquy refers to any pretrial rulings. A defendant’s failure to specify which pre-trial ruling he desires to reserve for appeal as part of a guilty plea entered pursuant to Crosby may limit the scope of appellate review, but does not preclude review altogether.[4] The types of rulings that should be reviewed in the absence of an express designation include the denial of a motion to suppress evidence or a confession and would exclude rulings that affect the conduct of the trial, but do not substantially relate to guilt, such as the denial of a continuance or a severance.[5]
Here, Jones does not challenge the denial of his motion to suppress but, rather, requests that he be allowed to withdraw his guilty plea due to ineffectiveness of counsel.
The Alford plea is one in which the defendant pleads guilty while maintaining his innocence. According to Alford, a defendant may plead guilty, without foregoing his protestations of innocence, if “the plea represents a voluntary and intelligent choice among the alternative courses of action open to defendant,] |7... especially where the defendant was represented by competent counsel whose advice was that *25 the plea would be to the defendant’s advantage.” [6]
Once a defendant has been sentenced, only those guilty pleas which are constitutionally infirm may be withdrawn by appeal or post-conviction relief.[7] A guilty plea is constitutionally infirm when it is not entered freely and voluntarily, if the Boykin colloquy was inadequate, or when a defendant is induced to enter the plea by a plea bargain, or what is justifiably believed to be a plea bargain, and that bargain is not kept.[8]
Jones has not filed a motion to withdraw his guilty plea. However, this does not prohibit a constitutionally infirm guilty plea from being set aside either by means of appeal or post-conviction relief.[9] Jones argues that his guilty pleas were constitutionally infirm because, due to the ineffectiveness of his attorney, they were not entered freely and voluntarily.
The Strickland[10] test applies to challenges to guilty pleas based on ineffective assistance of counsel.[11] In assessing a claim of ineffectiveness, the defendant must show that (1) his attorney’s performance was deficient and (2) the deficiency prejudiced him.[12] To establish prejudice, the defendant must show that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different.[13] In the context of a guilty plea, the defendant must prove that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded | ¡¡guilty and would have insisted on going to trial.[14] Although a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than direct appeal, when the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy.[15]
In the present case, the record is adequate to address the claims on appeal. Jones argues his counsel was ineffective for failing to object to the admission of his involuntary statements during the suppression hearing because his statements were not free and voluntary, but were given under the influence of heroin and cocaine, and after he was treated at the hospital for injuries sustained from being manhandled by the police.
The record does not support these claims. Defense counsel did file several motions to suppress, which included Jones’ statements. Further, defense counsel challenged these statements made to the police at the motion to suppress hearing.
*26 At the suppression hearing, defense counsel cross-examined Detective Russo. He asked questions regarding discussions with Jones that were not recorded and whether Jones told the detective at the time of the statement that he was on cocaine and heroin. Detective Russo denied that Jones had told him he was on cocaine and heroin at the time the statement was made. The detective explained that Jones told him he did take drugs, but, at the time of the interview, Jones said he was not under the influence and was fully aware of what he was doing. Detective Russo referenced Jones’ first statement where he specifically said that, while he was under the influence at the time of the robbery, he had “sobered up some to the point where I am understanding [sic] what has happened.” Defense counsel asked ^Detective Russo what time the robbery occurred that same day. When asked if they discussed how much drugs Jones was on at that time, Detective Russo responded, “no,” but knew he was on drugs that day. Detective Russo testified that no tests were performed to determine if defendant was on drugs at the time of his statement, but Jones was alert and coherent while giving his statements. According to Detective Russo, Jones did not indicate he did not understand his rights. Defense counsel also questioned Detective Russo about Jones’ treatment at Charity Hospital, wherein the detective stated he was aware that Jones was taken from the scene of his arrest to Charity Hospital for treatment, prior to giving his statements.
A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstances of each situation. The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence.[16] Intoxication renders a confession involuntary when the intoxication is of such a degree as to negate the defendant’s comprehension and to make him unconscious of the consequences of what he is saying. Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact; a trial judge’s conclusions on this issue will not be disturbed unless unsupported by the evidence.[17]
The evidence adduced at the suppression hearing supports the admissibility of Jones’ statements. On review, we find Jones’ claim that his guilty pleas were not | inknowing and voluntary but were forced because his counsel failed to properly object, is without merit.
Jones also makes a due process argument that his rights were violated when his counsel rendered ineffective assistance by failing to object to the acceptance of his Alford pleas without a factual basis to support the pleas. Where a defendant pleads guilty under Alford, “constitutional due process requires that the record contain ‘strong evidence of actual guilt’.”[18]
On review, we find the evidence presented at the hearing on the motion to suppress the identification demonstrated *27 strong evidence of Jones’ actual guilt and, therefore, supported his Alford plea.
We have examined the record for patent errors and note the following: LSA-C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. In the present case, while the commitment reflects the trial court properly advised Jones of the prescriptive period for post-conviction relief, the transcript does not. Further, the waiver of rights form contains incorrect advice regarding the prescriptive period for filing post-conviction relief because it informed Jones that he must file his application for post-conviction relief within “two (2) years of the date of this plea.” In later denying Jones’ motions for appeal without prejudice, the court properly noted that Jones had two years from the finality of the judgment of conviction and sentence to file for post-conviction relief.
Failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final renders the advisal incomplete.[19] Due to the potential confusion of these inconsistent advisals, we deem it prudent to Inremand the matter with instructions for proper notification. The trial court is instructed to inform Jones of the correct prescriptive period for filing for post-conviction relief by sending appropriate written notice to him after the rendition of this Court’s opinion and to file written proof into the record that Jones received the notice.
Further, the sentencing transcript provides that Jones’ sentences would “run concurrent with whatever he’s doing.” However, the minute entry/commitment reflects the sentences were “to run concurrently with any other sentence.” On remand, the trial court is instructed to correct the commitment to assure accuracy with the transcript, and we direct the clerk of court to transmit the original of the corrected minute entry to the officer in charge of the institution to which Jones has been committed.

CONVICTIONS AFFIRMED; REMANDED WITH INSTRUCTIONS.

. 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

. 338 So.2d 584 (La.1976).

. State v. Raines, 00-1942 (La.App. 5 Cir. 5/30/01), 788 So.2d 630; State v. McCoil, 05-658 (La.App. 5 Cir. 2/27/06), 924 So.2d 1120.

. See, State v. Joseph, 03-315 (La.5/16/03), 847 So.2d 1196.

. Id.

. See, State v. McCoil, 05-658 (La.App. 5 Cir. 2/27/06), 924 So.2d 1120.

. State v. McCoil, supra; State v. Gross, 95-621 (La.App. 5 Cir. 3/13/96), 673 So.2d 1058.

. State v. McCoil, supra.

. State v. Ebright, 04-972 (La.App. 5 Cir. 1/11/05), 894 So.2d 359.

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. State v. Johnson, 02-254 (La.App. 5 Cir. 2002), 822 So.2d 840 (citing State v. Washington, 491 So.2d 1337 (La.1986)).

. State v. Lagarde, 07-123 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105 (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

. State v. Lagarde, supra.

. State v. Washington, 491 So.2d 1337 (La.1986); State v. Montalban, 2000-2739 (La.2/26/02), 810 So.2d 1106.

. State v. Washington, supra.

. State v. Redditt, 03-0354 (La.App. 5 Cir. 10/28/03), 868 So.2d 704, writ denied, 2003-3484 (La.4/8/04) 870 So.2d 268 (citations omitted).

. Id.

. State v. Villarreal, 99-827 (La.App. 5 Cir. 2/16/00), 759 So.2d 126, 129-30, writ denied, 00-1175 (La.3/16/01), 786 So.2d 745.

. State v. Roche, 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 767-68, writ denied, 06-1566 (La.1/8/07), 948 So.2d 120.