MARC E. JOHNSON, Judge.
 

 |2The Jefferson Parish District Attorney filed a bill of information charging defendant, Ernest R. Jones, with several narcotics violations. Specifically, count one of the bill of information charged defendant with possession of heroin, in violation of LSA-R.S. 40:966 C; count two charged defendant with possession with intent to distribute cocaine, in violation of LSA-R.S. 40:967 A; count three charged him with possession of methadone, in violation of LSA-R.S. 40:967 C; and count four charged defendant with possession of hy-drocodone, in violation of LSA-R.S. 40:967 C. These charges proceeded to trial before a twelve person jury that found defendant guilty as charged on all four counts. The trial judge sentenced defendant to imprisonment at hard labor for five years on each count, to run concurrently. The trial judge also ordered that the first two years of the sentence on count two be served without benefit of parole, probation, or suspension of sentence.
 

 laWith regard to count two, the State thereafter filed a bill of information pursuant to LSA-R.S. 15:529.1 alleging defendant to be a second felony offender. Following a hearing, the trial judge found defendant to be a second felony offender, vacated the original sentence on count two, and resentenced defendant under the multiple offender statute to imprisonment at hard labor for forty-five years without ben-
 
 *278
 
 efít of probation or suspension of sentence, to run concurrently with the sentences imposed on counts one, three, and four. Defendant thereafter filed a motion to reconsider sentence that was heard and denied by the trial court.
 

 Defendant now appeals.
 

 FACTS
 

 On June 1, 2007, probation and parole officers, Toby Lamy and Richard Weide-nhaft, went to 12 Gardere Court in Harvey with an arrest warrant for Sharon Evans. The arrest warrant was based on Evans being an absconder from probation supervision. The two probation officers spoke briefly with an unidentified white male, who was in the garage, and then entered the residence to search for Evans. As Lamy and Weidenhaft walked down the hallway towards the rear of the residence, they encountered defendant coming out of a bathroom. Weidenhaft continued past defendant and went into a bedroom to the left that had been identified as Evans’ bedroom.
 
 [1]
 
 When Weidenhaft looked inside the closet, he found a .22 caliber rifle and immediately informed Lamy, who had stayed with defendant in the hallway, of the weapon.
 

 After learning of the weapon, Lamy handcuffed defendant for safety reasons, but specifically told him he was not under arrest. At that point, Lamy left defendant and went to check on Weidenhaft to see if he was okay. Afterward, Lamy returned to defendant in order to conduct a pat down. Before he did so, Lamy asked defendant if he had any weapons, and defendant replied that he did not |4have any weapons, but that he did have some “L-tens” in his pocket. Unfamiliar with that term, Lamy asked defendant what “L-tens” were, and defendant explained that they were Lortab pills.
 
 [2]
 

 Lamy then reached in defendant’s pocket and removed the contents, which included two foil packets in a bag, some white powder, some off-white rock-like substances, and six pills, all of which were wadded up in different bags and came out at the same time. Lamy placed the narcotics on a counter next to defendant, had defendant sit down, and then contacted the Jefferson Parish Sheriffs Office.
 

 In response to that call, Detective Chris Morris arrived at the scene and field tested the drugs which were positive for heroin, crack cocaine, and hydroeo-done. After the substances tested positive, Detective Morris advised defendant of his rights and placed him under arrest. Defendant subsequently advised the officer that the vehicle parked outside was his, and defendant further gave his consent to search the vehicle. During the search of defendant’s vehicle, Detective Morris found a pink tablet, which he identified as methadone, inside a CD case on the backseat. After finding the methadone, Detective Morris went back inside the house, advised defendant of his rights again, and told him he was also being arrested for possession of methadone since he could not produce a prescription. Detective Morris then transported defendant to the Jefferson Parish Correctional Center.
 

 At trial, Charles Krone, who was accepted as an expert in the field of analysis and identification of controlled dangerous substances, identified State’s Exhibit 2 as a plastic bag containing green tablets
 
 *279
 
 marked “Watson 503;” State’s Exhibit 3A as a plastic bag containing off-white rock-like objects (net weight of 8.2 grams) and State’s Exhibit 3B as a small knotted plastic bag containing 1 .^additional pieces of off-white material (gross weight of 1.5 grams); State’s Exhibit 4 as a sealed plastic bag containing two loose pieces of folded foil inside of which was a tan powder (net weight of powder was .18 grams); State’s Exhibit 5 as a knotted plastic bag containing white powder; and State’s Exhibit 6 as an orange tablet. He further testified that State’s Exhibit 2 contained hydrocodone; State’s Exhibit 3 contained cocaine; State’s Exhibit 4 contained heroin; State’s Exhibit 5 contained cocaine; and State’s Exhibit 6 contained methadone.
 

 SUFFICIENCY OF THE EVIDENCE
 

 On appeal, defendant challenges the sufficiency of the evidence used to convict him of possession with intent to distribute cocaine. He specifically contends that with regard to count two, there was no direct evidence that he had the intent to distribute cocaine, and that the only evidence, other than the photograph of Sharon Evans, was circumstantial. In response to this argument, the State contends that it produced sufficient evidence at trial to prove that defendant intended to distribute the cocaine found on his person.
 

 In reviewing the sufficiency of evidence pursuant to the standard set forth in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), an appellate court must determine whether the evidence, either direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt.
 
 State v. Neal,
 
 00-0674 (La.6/29/01), 796 So.2d 649, 657,
 
 cert. denied,
 
 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002);
 
 State v. Lawson,
 
 08-123 (La.App. 5 Cir. 11/12/08), 1 So.3d 516, 522.
 

 In this case, defendant was convicted of possession with intent to distribute cocaine in violation of LSA-R.S. 40:967 A. To prove that offense, the State was required to show defendant knowingly and intentionally possessed the drug, and [ fithat he did so with the specific intent to distribute it.
 
 State v. Clark,
 
 05-61 (La.App. 5 Cir. 06/28/05), 909 So.2d 1007, 1011-12,
 
 writ denied,
 
 05-2119 (La.3/17/06), 925 So.2d 538.
 

 LSA-R.S. 14:10(1) defines specific criminal intent as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” The intent to distribute may be established by proving circumstances surrounding the defendant’s possession which give rise to reasonable inferences of intent to distribute.
 
 State v. White,
 
 98-91 (La.App. 5 Cir. 6/30/98), 715 So.2d 714, 717,
 
 writ denied,
 
 98-2043 (La.11/25/98), 729 So.2d 577. Factors which may give rise to a reasonable inference that a defendant had the specific intent to distribute include: 1) previous attempts to distribute; 2) whether the drug was in a form consistent with distribution to others; 3) the amount of the drug; 4) expert or other testimony showing the amount found in the defendant’s possession to be inconsistent with personal use only; and 5) paraphernalia evidencing an intent to distribute.
 
 State v. Carey,
 
 07-674 (La.App. 5 Cir. 12/27/07), 975 So.2d 27, 29,
 
 writ denied,
 
 08-0430 (La.11/10/08), 996 So.2d 1064. This Court has held that by describing the factors as useful, the Louisiana Supreme Court did not require that the evidence fall squarely within those listed factors to be sufficient for the jury to find the requisite intent to distribute.
 
 *280
 

 State v. Mosley,
 
 08-1318 (La.App. 5 Cir. 5/12/09), 18 So.3d 705, 711,
 
 writ denied,
 
 09-1316 (La.3/5/10), 28 So.3d 1002.
 

 In this case, the State produced evidence that defendant had the intent to distribute through the testimony of Lieutenant Daniel Jewell, Jr., who was accepted as an expert in the field of distribution, quantity, packaging, and value of narcotics. He testified that the packaging of the cocaine in State’s Exhibit 3 was consistent with distribution, and not personal use. He noted that there were roughly three $50.00 pieces of crack cocaine, a couple of smaller pieces which he thought were a 17little big for $20.00 pieces, and a large boulder that was worth approximately $300.00 alone. Lieutenant Jewell testified that the cocaine was apportioned and ready for distribution. He further stated that the total weight of the crack cocaine, approximately 9 grams, had a street value of $900.00 if broken up into .2 gram rocks and approximately $500.00 if broken down into larger rocks.
 

 Lieutenant Jewell explained that it was not common or reasonable for a user to buy that much crack cocaine, and that officers do not normally see a traditional crack cocaine user buy $400.00 to $800.00 worth of crack cocaine at a time. Jewell testified that a traditional crack cocaine user will buy one or two rocks, and then get more money to buy another couple of rocks. Jewell believed that “this person” bought these drugs and broke it up to prepare for distribution.
 

 The jury, by its verdict of guilty on count two, obviously accepted Lieutenant Jewell’s testimony that the packaging of cocaine was consistent with distribution and rejected the possibility that the cocaine was for personal use. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal.
 
 State v. Rowan,
 
 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
 

 Viewing the evidence presented at trial in the light most favorable to the prosecution, we find that a rational trier of fact could have concluded, beyond a reasonable doubt, that defendant was guilty of possession with intent to distribute cocaine. Accordingly, this assigned error is without merit.
 

 MOTION TO SUPPRESS EVIDENCE
 

 On appeal, defendant also challenges the denial of his motion to suppress evidence. He contends that the probation officer did not have the authority to interrogate, detain, handcuff, and subsequently search him because he was not a probationer or parolee being supervised by that probation officer. He also asserts |sthat the detention and search would have still been- illegal even if conducted by a “real police officer” because there was no reasonable suspicion that defendant had committed, was committing, or was about to commit a crime. Further, defendant argues that the initial detention of defendant escalated into an arrest without probable cause and, therefore, defendant’s statement that he had pills in his pocket as well as the evidence seized pursuant to that statement should be suppressed.
 

 The State responds that the probation officer was justified in initially handcuffing defendant for officer safety, and further, once defendant voluntarily admitted that he had the pills in his pocket, the officer had reasonable suspicion to search defendant and probable cause to arrest him.
 

 In this case, Officer Lamy, Detective Morris, and defendant testified at the suppression hearing. The testimony at the suppression hearing of Lamy and Morris
 
 *281
 
 was similar to their trial testimony. The testimony showed that Officers Weidenhaft and Lamy walked through Evans’ residence looking for Evans, for whom they had an arrest warrant. As they did so, they encountered defendant coming out of the bathroom. Weidenhaft continued on to the back bedroom, while Lamy stayed with defendant and asked him who he was. When Weidenhaft “screamed out” that he had found a weapon in the bedroom, Lamy handcuffed defendant for the safety of the officers and everyone else on the scene.
 

 Lamy explained that prior to the pat down, he asked defendant if he had any weapons because he wanted to know if defendant had any sharp objects or anything that could hurt him during the pat down. Defendant told Lamy he did not have any weapons, but he had “L-tens” in his pocket. Officer Lamy retrieved the pills, kept defendant handcuffed, and contacted the Jefferson Parish Sheriffs Office because he then had evidence that defendant was committing a crime. At the suppression hearing, Lamy additionally testified that there was another male in |athe residence who was also handcuffed for safety reasons, especially since there were two officers and three individuals in the house.
 

 After hearing the testimony at the suppression hearing, the trial judge denied the motion, stating:
 

 The Court is going to deny the motion. I agree with the State. The probation officer was there, he had a right to inquire as to, for his safety and the other person’s safety, if anybody had a weapon. The information was volunteered, which led to this particular case and JP being involved[J
 

 Defendant now challenges this denial. For the reasons that follow, we find that the officers were justified in their actions with regard to the detention and search of defendant and, therefore, the trial court did not err in denying the motion to suppress evidence.
 

 Both the Fourth Amendment of the United States Constitution and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement.
 
 State v. Roche,
 
 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 765,
 
 writ denied,
 
 06-1566 (La.1/8/07), 948 So.2d 120.
 

 The trial court’s denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. To determine whether the trial court’s denial of a motion to suppress is correct, the appellate court may consider the evidence adduced at the suppression hearing as well as the evidence presented at trial.
 
 State v. Williams,
 
 10-51 (La.App. 5 Cir. 7/27/10), 47 So.3d 467, 471,
 
 writ denied,
 
 10-2083 (La.2/18/11), 57 So.3d 330.
 

 In the present case, the probation and parole officers were within their authority as they entered the residence of Sharon Evans for the purpose of locating linand serving an arrest warrant on her.
 
 [3]
 
 While legally in the house, they encountered defendant. The issue which we will first address is whether defendant was arrested when the probation officer initially hand
 
 *282
 
 cuffed him, and if not, whether the handcuffing was warranted.
 

 The Louisiana Supreme Court has discussed an arrest as follows:
 

 An arrest is “the taking of one person into custody by another [through] actual restraint [that] may be imposed by force or may result from submission of the person arrested to the custody of one arresting him.” La.Code Crim. Proc. art. 201. Whether a person has been arrested is determined by an objective test; neither the person’s subjective impression nor the lack of formality of the arrest resolves the issue.
 

 The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended restraint on the person’s liberty.
 

 State v. Fisher,
 
 97-1133 (La.9/9/98), 720 So.2d 1179, 1183.
 

 Considering the totality of the circumstances, we find that the officer’s action in initially handcuffing defendant did not rise to the level of an arrest. Officer Lamy did not have the intent to impose an extended restraint on defendant’s liberty at that time, and in fact, told defendant that he was not under arrest but was being handcuffed for safety reasons. This explanation seems justified in light of the fact that Officer Weidenhaft had just found a gun in Evans’ bedroom and was in the process of looking for Evans, for whom he had an arrest warrant. In addition, there were three individuals in the house, defendant, Evans, and an unidentified male, and only two officers.
 

 [ 11 Louisiana law recognizes that law enforcement officers
 
 [4]
 
 should not be required to take unnecessary risks is performing their duties. This Court has held that an officer’s handcuffing a suspect is a reasonable method of ensuring officer safety. See
 
 State v. Williams,
 
 10-51 (La.App. 5 Cir. 7/27/10), 47 So.3d 467, 472-73,
 
 writ denied,
 
 10-2083 (La.2/18/11), 57 So.3d 330;
 
 State v. Morton,
 
 08-164 (La.App. 5 Cir. 7/29/08), 993 So.2d 651, 657.
 

 We acknowledge that at the time of the initial handcuffing, defendant was not a suspect. Nonetheless, due to safety concerns, the probation officer was justified in handcuffing defendant once the other officer alerted him that a gun had been found. In
 
 State v. Palmer,
 
 09-14 (La.7/1/09), 14 So.3d 304, 310, the Louisiana Supreme Court affirmed the trial court’s denial of defendant’s motion to suppress, noting that it agreed with the trial court that the officers’ use of handcuffs to detain defendant along with other individuals on the premises was objectively reasonable in light of the facts and circumstances confronting the police, taking into account the fact that police officers are often forced to make split second decisions about the amount of force that is necessary in a particular situation.
 
 See also State v. Dee,
 
 09-712 (La.App. 5 Cir. 2/23/10) 34 So.3d 892, 901,
 
 writ denied,
 
 10-705 (La.10/29/10), 48 So.3d 1097, where this Court noted that
 
 *283
 
 “[a] warrant to search premises for contraband, founded on probable cause, implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.”
 

 Based on our review of the circumstances of this case, as well as applicable jurisprudence, we find that the initial handcuffing did not amount to an arrest, and further that the handcuffing was justified for safety reasons.
 

 112Subsequent to the initial handcuffing of defendant, Officer Lamy went to the back bedroom to check on his partner who had just alerted him to the discovery of a gun. Afterward, Lamy returned to defendant in order to conduct a pat down. Before he did so, Lamy asked defendant if he had any weapons. Defendant replied that he did not have any weapons, but he had some “L-tens” in his pocket. In light of these facts, we must now determine whether there was probable cause to arrest defendant and then search him after defendant told the probation officer he had “L-tens” on his person.
 

 Probable cause to arrest exists when the facts and circumstances within an officer’s knowledge, and of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime.
 
 State v. Fisher,
 
 720 So.2d at 1184;
 
 State v. Harris,
 
 00-1980 (La.App. 5 Cir. 4/11/01), 786 So.2d 798, 803. A police officer need not be able to negate all possible lawful explanations of a situation before making an arrest but must have within his knowledge information upon which to reasonably base a belief that the person to be arrested is criminally connected with the circumstances.
 
 State v. Phillips,
 
 347 So.2d 206, 209 (La.1977). The determination of the existence of probable cause must be judged by the probabilities and practical considerations of everyday life on which average police officers can be expected to act.
 
 State v. Fisher,
 
 720 So.2d at 1184;
 
 State v. Harris,
 
 786 So.2d at 803.
 

 A search incident to a lawful arrest is a well-recognized exception justifying a warrantless search.
 
 State v. Grimes,
 
 09-2 (La.App. 5 Cir. 5/26/09), 16 So.3d 418, 423,
 
 writ denied,
 
 09-1517 (La.3/12/10), 28 So.3d 1023. In a search incident to a lawful arrest, the officer may search the suspect’s person and the area within his immediate control in order to remove weapons and prevent destruction of evidence.
 
 State v. London,
 
 01-1016 (La.App. 5 Cir. 3/13/02), 815 So.2d 162, 165-66,
 
 writ denied,
 
 02-1567 (La.5/30/03), 845 So.2d 1067.
 

 In the instant case, defendant informed the officer that he had “L-tens” on his person. At the suppression hearing, Officer Lamy testified that he did not know what “L-tens” were, so he asked defendant. Defendant told the officer the term referred to hydrocodone, which is listed in LSA-R.S. 40:964 as a Schedule II controlled dangerous substance. At that point, Officer Lamy had probable cause to believe that defendant had committed a narcotics violation. Accordingly, he was justified in arresting defendant and in thereafter retrieving the drugs from his pocket.
 

 Based on the foregoing discussion and in light of the particular circumstances presented herein, we find no error in the trial court’s denial of defendant’s motion to suppress evidence. The arguments raised by defendant in this assigned error are without merit.
 

 ADMISSION OF PHOTOGRAPHIC EVIDENCE
 

 In this assigned error, defendant argues that the trial court erred by admit
 
 *284
 
 ting into evidence a prejudicial photograph of Sharon Evans as it was not relevant to any issue or element in this case. He contends that the photograph was unfairly prejudicial and had the likely result of misleading the jury. Defendant asserts that Evans looks like a crack cocaine addict in the photograph and, therefore, the jury could have easily made the inference that he was at Evans’ residence to sell drugs to Evans.
 

 The State responds that the trial judge did not abuse his discretion in admitting the photograph of Evans into evidence. The State notes that the photograph was admissible to shed light upon Lamy’s presence in the house and was further relevant because Evans’ presence in the house was res gestae to the charged crime.
 

 | l4Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” LSA-C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by law, and irrelevant evidence is not admissible. LSA-C.E. art. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. LSA-C.E. art. 403;
 
 State v. Durand,
 
 07-4 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, 1036-37,
 
 writ denied,
 
 07-1545 (La.1/25/08), 973 So.2d 753.
 

 Photographs are usually admissible if they illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, subject to the test that their probative value outweighs any prejudicial effect. In general, an appellate court places great weight upon a trial court’s ruling on the relevancy of evidence and such a determination will not be reversed absent a clear abuse of discretion.
 
 State v. Battaglia,
 
 03-692 (La.App. 5 Cir. 11/25/03), 861 So.2d 704, 710,
 
 writ denied,
 
 04-1701 (La.4/29/05), 901 So.2d 1058.
 

 In the present case, the evidence at issue is a photograph of Sharon Evans, the individual who the officers were looking for when they encountered defendant. When the prosecutor attempted to introduce this photograph at trial, defense counsel objected arguing that the photograph of Evans was irrelevant and prejudicial. He contended that the State was trying to show that Evans was a crack cocaine addict and that defendant was dealing drugs. In response, the prosecutor asserted that the photograph of Evans was relevant to show who the officers were looking for and “to give a complete picture.” Further, the prosecutor stated that he was not planning to argue that Evans was a crack cocaine addict or that defendant was a drug dealer. Defense counsel again argued that the photograph was not 11 srelevant especially in light of the fact that he had never disputed that Evans was at her residence on the day in question.
 

 After considering the arguments of counsel, the trial court allowed the photograph into evidence. In so ruling, the judge noted that the photograph was not prejudicial to defendant and further that it was relevant to show the jury who the officers were looking for and why they were at the house. Defense counsel again noted his objection, commenting that the prejudice outweighed any minimal relevance of the photograph. The trial judge again said that he did not see any prejudice to defendant in allowing the photograph into evidence, noting the photograph did not illustrate anything other than the fact that Evans existed.
 

 
 *285
 
 After a review of the record, we find that the trial court did not err by admitting the photograph into evidence. The photograph was relevant to explain the officers’ presence at the house and to give the jury “a complete picture” of the circumstances leading to the arrest of defendant. Further, it cannot be said that the introduction of the photograph prejudiced defendant. Evans was not a party to the instant offenses, nor was she a witness at trial. Moreover, contrary to defendant’s assertions, the photograph does not appear to depict Evans as a crack cocaine addict. Given these circumstances, we find that the trial court did not abuse its discretion in admitting this photograph into evidence. Accordingly, this assignment of error is without merit.
 

 ERROR PATENT REVIEW
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals one error that requires correction.
 

 The May 26, 2009 commitment indicates that the trial judge ordered defendant’s sentences to run concurrently with each other and with any other sentence defendant was presently serving. The transcript reflects that the trial |irjudge ordered the four sentences to run concurrently to each other; however, he did not order that the sentences run concurrently with any other sentence defendant was presently serving. The transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). Therefore, we remand this case to the trial court with instructions to correct the commitment to delete the reference that the sentences are to run concurrently with any other sentence defendant was presently serving.
 
 State v. Shannon,
 
 04-1361 (La.App. 5 Cir. 4/26/05), 902 So.2d 519, 524.
 

 For the reasons set forth herein, we affirm defendant’s convictions and sentences and remand the matter to the trial court with instructions to correct the commitment in accordance with this opinion.
 

 CONVICTIONS AND SENTENCES AFFIRMED; MATTER REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . Officer Weidenhaft eventually found Evans hiding between the headboard of the bed and the wall.
 

 [2]
 

 . Lortab is a trade name for a combination of acetaminophen and hydrocodone.
 
 State v. Moore,
 
 44,429 (La.App. 2 Cir. 8/26/09), 20 So.3d 1137, 1144, n. 9.
 

 [3]
 

 .
 
 See State v. Young,
 
 07-988 (La.App. 5 Cir. 6/19/08), 988 So.2d 759, 762-763,
 
 writ denied,
 
 08-1599 (La.3/27/09), 5 So.3d 139, and
 
 State v. Saulsby,
 
 04-880 (La.App. 5 Cir. 12/28/04), 892 So.2d 655, 657-658, in which this Court discussed a probationer's and parolee’s reduced expectation of privacy.
 
 See also
 
 LSA-R.S. 15:574.4.2.
 

 [4]
 

 . LSA-C.Cr.P. art. 899 F provides that “[probation officers shall be deemed to be peace officers and shall have the same powers with respect to criminal matters and the enforcement of the law relating thereto as sheriffs, constables, and police officers have in their respective jurisdictions.”
 
 See also
 
 LSA-R.S. 15:574.8 which is the same provision applicable to parole officers.