HANS J. LILJEBERG, Judge.
| ¡¡Defendant, Raymond E. Melancon, appeals his convictions and sentences for distribution of heroin, possession with intent to distribute heroin, and possession of a firearm by a convicted felon. For the following reasons, we affirm.

PROCEDURAL HISTORY

Defendant was charged by bill of information with distribution of heroin, a violation of La. R.S. 40:966(A) (count two); possession with intent to distribute heroin, a violation of La. R.S. 40:966(A) (count three); and possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1 (count four).[1] He pled not guilty to all charges. A jury trial was held, and the jury found defendant guilty as charged on all counts.
The trial court sentenced defendant as follows: 30 years at hard labor on count two, with five years to be served without benefit of probation or suspension of sentence; 30 years at hard labor on count three, with five years to be served without benefit of probation or suspension of sentence; and 20 years at hard labor |4on count four to be served without benefit of parole, probation, or suspension of sentence. All sentences were ordered to run concurrently.
Thereafter, the State filed a multiple offender bill of information, and after a hearing, defendant was adjudicated a third felony offender. The trial court vacated the previous sentence on count two and re-sentenced defendant under La. R.S. 15:529.1 to 40 years at hard labor without benefit of probation or suspension of sentence.

FACTS

At trial, Detective Gary Barteet testified that in September of 2012, he was working in the narcotics division of the Jefferson Parish Sheriffs Office,- and he received information that caused him to conduct an investigation of defendant. Surveillance was established, and defendant was seen going to what the officers refer to as “neutral locations,” such as shopping centers, fast food restaurants, and busy parking lots. Detective Barteet testified that drug dealers and drug users often meet in these neutral locations in order to conduct drug transactions. The police also observed that defendant went to an apartment complex at 650 Bellemeade frequently enough for the surveillance team to believe that he had access there, although a particular apartment was not identified.
*105 On September 28, 2012, while conducting surveillance, Detective Barteet saw defendant driving a gray Chevrolet truck in the 1500 block of Lapalco Blvd. in Harvey, Louisiana, near a Popeye’s restaurant. Detective Barteet watched defendant to see if he was just eating or if he was doing anything suspicious. Defendant never entered a business; rather, he moved from one position to another inside the parking lot and just parked. Based on that information, Detective Barteet contacted his superiors and told them that he believed a potential narcotics transaction would occur, but he left before any transaction took place.
IsBrook Franklin testified that she knew defendant through a mutual friend, that they “hung out” together, and that she bought drugs from him. On September 28, 2012, Ms. Franklin called defendant when she got off of work and defendant told her to meet him at the Domino’s Pizza near her home. Ms. Franklin drove to the location in her Toyota Corolla with a friend in the front passenger seat. Upon arriving, defendant waved her down after exiting Popeye’s, which was near Domino’s, and then got into the back seat of Ms. Franklin’s ear. Ms. Franklin moved to the driver’s side back seat and purchased “a bag” from defendant. Defendant then walked away and Ms. Franklin left in her car.
Soon after meeting with defendant, Ms. Franklin was pulled over by an unmarked police car. Two officers approached her car and ordered her out of her vehicle. Ms. Franklin complied. She attempted to hide the bag she had just bought but was unsuccessful; it “rolled down” and the officers picked it up. The officers also found paraphernalia in the car, a spoon, which was in “open view.”
Ms. Franklin testified that she had been charged with possession of heroin in relation to this case and was in the State’s diversion program, but she said she had not been provided a “deal” by the State in exchange for information or testimony.
Detective Patrick Evans testified that he was employed by the Jefferson Parish Sheriffs Office on September 28, 2012, when he received a call to assist a narcotics unit in an investigation. Pursuant to the instructions given to him, Detective Evans stopped a Toyota- Corolla, which was occupied by two white females, on Bannerwood just off of Lapalco. When Detective Evans and another officer approached the vehicle, Detective Evans saw a metal spoon in the car, which he knew was commonly used to cook heroin before loading it into a syringe. At that time he asked the driver, Brook Franklin, to exit the vehicle. When she stepped out of the car, a clear plastic bag containing a brown powder substance he ^believed to be heroin fell to the ground from her lap. Ms. Franklin was placed in handcuffs and advised of her rights. Ms. Franklin told Detective Evans that she had purchased the heroin “from a black male named Ray from the Popeye’s at Manhattan and La-palco.”
Agent Christy Clement of the Jefferson Parish Sheriffs Office testified that on September 28, 2012, she participated in the investigation of defendant. She saw a vehicle pull up and defendant exit the Popeye’s and get into the rear passenger side of the vehicle. The driver, Brook Franklin, exited the driver’s side and got into the rear driver’s side of the car. Thirty seconds to one minute later, Ms. Franklin got out of the car and back into the driver’s seat and appeared to be putting something in her pocket. Defendant then exited the vehicle and walked into the Domino’s while Ms. Franklin left in her car. From her position, Agent Clement could not see exactly what Ms. Franklin put into her pock *106 et, but based upon her past experience it appeared to be a narcotics transaction. Agent Clement testified that defendant was taken into custody at the Domino’s location after a brief struggle.
Agent Clement also participated in the interview of Brook Franklin. Ms. Franklin was advised of her Miranda[2] rights, and Ms. Franklin indicated that she wished to waive her rights and cooperate. Ms. Franklin then told Agent Clement that she had purchased heroin from defendant on several occasions. She stated that she sometimes purchased it from him at an apartment on Bellemeade and she was aware of the location of the apartment. Ms. Franklin also said that defendant had 50 to 100 bags of heroin with him when she bought heroin from him that day. When questioned about defendant not having anything on his person when he was arrested, Ms. Franklin said that she may have been confused because she had also [ ^purchased from defendant earlier in the day. Ms. Franklin described defendant’s vehicle and later pointed out defendant’s apartment to police while still in custody after physically travelling to the location.
After defendant was arrested, Detective Barteet learned that defendant was attempting to have family members remove items from his apartment and retrieve' money for his bond. Detective Barteet obtained a search warrant for 650 Belle-meade, Apartment 4-K, because this apartment had been identified as belonging to defendant.
During execution of the search warrant, several items were discovered, including a nine millimeter semi-automatic pistol with a loaded magazine, a gun case with spare magazines, various documents in the name of Raymond Melancon, two clear plastic bags with brownish powder that tested positive for heroin, one larger clear plastic bag with brownish powder that tested positive for heroin, a digital scale with brownish powder residue, a bottle of GNC inositol,[3] a blender with brownish powder residue,[4] a Samsung cell phone, and $20,000.00 in U.S. currency.
Margie Barfield testified that she was the property manager of Bellemeade Apartments, that her office was on the premises, and that she also resided in the apartment complex. She was generally familiar with the “comings and goings” of people who rent the apartments. Danielle McGinnis was the leaseholder for Apartment 4-K and defendant was listed as her employer. However, during the six-month rental period from May 1, 2012 through October 31, 2012, Ms. Barfield only saw Ms. McGinnis three times: when she applied for the apartment, when she signed the lease, and when she gave notice that the apartment would be vacated. ^During the entire term of the lease, Ms. Barfield never saw anyone “drop by that apartment other than' the defendant.” She also saw defendant driving vehicles that were listed on the parking registration for Apartment 4-K.

LAW AND DISCUSSION

Defendant has filed a counseled brief setting forth four assignments of error, and a pro se brief setting forth three assignments of error.
*107 In his second counseled assignment of error, defendant argues that the evidence was insufficient to support the verdict on count two, distribution of heroin.[5] In his third counseled assignment of error, defendant contends that the evidence was insufficient to support the verdict on count three, possession with intent to distribute heroin, and count four, possession of a firearm by a convicted felon.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Under the Jackson standard, a review of a criminal conviction record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. State v. Flores, 10-651, p. 6 (La.App. 5 Cir. 5/24/11), 66 So.3d 1118, 1122. Rather, the reviewing court must decide whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Id.; State v. Holmes, 98-490, p. 3 (La.App. 5 Cir. 3/10/99), 735 So.2d 687, 690.
It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443. The trier of fact shall evaluate credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Bradley, 03-384, p. 5 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writ denied, 03-2745 (La.2/13/04), 867 So.2d 688. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. State v. Caffrey, 08-717, p. 5 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. State v. Williams, 05-59, p. 5 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. In other words, circumstantial evidence is evidence which proves a fact, and from that fact one may indirectly but reasonably and logically conclude another fact which is sought to be proven. State v. Le, 13-314, p. 9 (La.App. 5 Cir. 12/12/13), 131 So.3d 306, 313.
When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Wooten, 99-181, p. 4 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. This is not a separate test from the Jackson standard, but rather provides a helpful basis for *108 determining the existence of reasonable doubt. Id. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
COUNT TWO
Defendant was convicted in count two of distribution of heroin, a violation of La. R.S. 40:966(A). A defendant is guilty of distribution of heroin when he transfers possession or control of heroin to his intended recipient. See La. R.S. 40:961(14).
On appeal, defendant does not dispute that the substance Brook Franklin was arrested with was, in fact, heroin. Instead, he challenges whether the State proved that he transferred possession or control of the heroin to Ms. Franklin.
At trial, Detective Gary Barteet testified that on September 28, 2012, he saw defendant driving in a parking lot on Lapalco. Defendant never entered a business but ultimately moved from one position to another inside the parking lot and just parked. Brook Franklin testified that she knew defendant and had previously purchased drugs from him. She further testified that on September 28, 2012, she had contact with defendant for the purpose of purchasing drugs, and defendant told her to meet him at a specific location. Upon arriving, defendant got into her car and she purchased “a bag” from him. Ms. Franklin stated that she did not have any heroin, either on her person or in her car, before defendant got into her car. Agent Clement witnessed the interaction between defendant and Ms. Franklin. Agent Clement testified that, based upon her past experience, it appeared to be a narcotics | ntransaction. Officers subsequently detained Ms. Franklin, at which time heroin was discovered in her possession.
Defendant argues that none of the officers who testified at trial could say definitively whether he was in possession of heroin when he entered Ms. Franklin’s vehicle. Defendant attacks Ms. Franklin’s credibility on the basis that she was using heroin at the time she gave the statement identifying defendant as the person who sold her the drugs. He also contends that Ms. Franklin was not credible, because although she claimed that she was not given a “deal” by the State in exchange for her testimony, she was placed in a diversion program and the charges against her for possession of heroin were dismissed.
The jury heard evidence of Ms. Franklin’s drug use both during and after her arrest. It also heard that Ms. Franklin was placed in a diversion program. When the issue of a witnesses’ drug use is brought before the jury by a defendant, it is within the jury’s discretion to believe or not believe the evidence presented to discredit that witness. See State v. Alexander, 12-836 (La.App. 5 Cir. 5/23/13), 119 So.3d 698, writ denied, 13-1981 (La.3/21/14), 135 So.3d 614.
In the present case, the jury apparently found Ms. Franklin’s testimony credible in spite of the testimony about her drug use and the diversion program. Considering the entire record before us, we find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that defendant distributed heroin to Ms. Franklin. This assignment of error is without merit.
COUNT THREE
Defendant was convicted in count three of possession with intent to distribute heroin, a violation of La. R.S. 40:966(A). To prove this offense, the State was required to show defendant knowingly and intentionally possessed | ^heroin and *109 that he did so with the specific intent to distribute it. See State v. Jones, 11-8, pp. 5-6 (La.App. 5 Cir. 11/15/11), 78 So.3d 274, 279, unit denied, 11-2781 (La.4/13/12), 85 So.3d 1246; State v. Collins, 09-283, p. 6 (La.App. 5 Cir. 12/8/09), 30 So.3d 72, 77, unit denied, 10-0034 (La.9/3/10), 44 So.3d 696.
Possession of a controlled dangerous substance may be established by actual physical possession or by constructive possession. State v. Major, 03-3522, p. 7 (La.12/1/04), 888 So.2d 798, 802. A person not in physical possession of a drug may have constructive possession when it is established that the drug is under that person’s dominion or control. State v. Washington, 11-716, p. 8 (La.App. 5 Cir. 3/13/12), 90 So.3d 1157, 1162.
It is not contested that the substance found at 650 Bellemeade, Apartment 4-K, was heroin. Rather, defendant argues that the State failed to produce sufficient evidence to link him to the Bellemeade apartment.
At trial, the State presented evidence that defendant resided in and/or used the apartment in connection with drug distribution. Police officers asked Ms. Franklin where defendant lived and she guided them to the apartment complex, pointing out a specific apartment. Ms. Franklin said she had been to defendant’s apartment on several occasions to purchase and use drugs. Margie Barfield, property manager of Bellemeade Apartments, saw defendant on several occasions driving vehicles that were listed on the parking registration for Apartment 4-K. During the entire term of the lease, Ms. Barfield never saw anyone “drop by that apartment other than the defendant.” Detective Barteet testified that during the surveillance of defendant, police officers saw defendant visit the apartment complex at 650 Bellemeade frequently enough for the surveillance team to. believe that he had access there, although a particular apartment was not identified. Additionally, the search warrant executed for 650 Bellemeade, Apartment 4-K, | ^yielded several items including various documents in the name of Raymond Melancon.
The evidence shows that defendant had access to the apartment and often used it in connection with drug distribution. Based on the foregoing testimony and evidence, we find that the State presented sufficient evidence to prove that defendant exercised dominion and control over the heroin in the apartment and thus, he constructively possessed it.
Next, the State was required to show that defendant had the specific intent to distribute the heroin. La. R.S. 14:10(1) defines specific criminal intent as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” The intent to distribute may be established by proving circumstances surrounding the defendant’s possession, which give rise to reasonable inferences of intent to distribute. Jones, 11-8 at 6, 78 So.3d at 279. Factors that may give rise to a reasonable inference that a defendant had the specific intent to distribute include the following: 1) previous attempts to distribute, 2) whether the drug was in a form consistent with distribution to others, 3) the amount of the drug, 4) expert or other testimony showing the amount found in the defendant’s possession to be inconsistent with personal use only, and 5) paraphernalia evidencing an intent to distribute. Id.
Drug paraphernalia, such as a scale, is evidence that the defendant possessed with intent to distribute drugs. State v. Trahan, 425 So.2d 1222, 1225 (La. *110 1983). Further, possession of large sums of cash and possession of weapons may also be considered evidence of the intent to distribute. See State ex rel. B.L., 02-923, p. 4 (La.App. 5 Cir. 1/28/03), 839 So.2d 246, 248. In the absence of circumstances from which an intent to distribute may be inferred, the mere possession of drugs |14does not evidence the intent to distribute, unless the quantity is so large that no other inference is possible. State v. Henry, 08-658, p. 10 (La.App. 5 Cir. 10/27/09), 27 So.3d 935, 943, writ denied, 09-2485 (La.4/23/10), 34 So.3d 269.
In the present case, we note that the State presented evidence at trial that defendant had a prior conviction for possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A), in case number 01-6313 of the 24th Judicial District Court. Next, we find that the testimony of Detective Barteet and the State’s exhibits establish that a large amount of heroin was found in the apartment and there was an absence of paraphernalia indicative of usage, such as spoons or syringes. Evidence removed from the apartment also included tools used in the packaging and distribution of narcotics, such as a scale, inositol powder, and a blender. Additionally, defendant’s apartment contained a large sum of cash, $20,000.00, and a nine millimeter semi-automatic pistol.
Based on all of the testimony and evidence presented, we find that the State established that defendant had the specific intent to distribute the heroin found in the apartment. Accordingly, the State presented sufficient evidence to support defendant’s conviction for possession with intent to distribute heroin.
COUNT FOUR
Defendant was convicted in count four of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. In order to convict a defendant of illegal possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt that the defendant had (1) possession of a firearm, (2) a prior conviction for an enumerated felony, (3) an absence of the ten-year statutory period of limitation, and (4) the general intent to commit the offense. See La. R.S. 14:95.1; State v. Jones, 09-688, p. 6 (La.App. 5 Cir. 2/9/10), 33 So.3d 306, 314. Actual possession of a firearm is not necessary to prove the possession element of |1BLa. R.S. 14:95.1. Id. Constructive possession is sufficient to satisfy the element of possession. Jones, supra. A person is in constructive possession of a firearm if the firearm is subject to his dominion and control. Id., 09-688 at 6-7, 33 So.3d at 314.
On appeal, defendant does not dispute that the State established a prior felony conviction or the requisite ten-year statutory period of limitations. Instead, defendant argues that the State failed to present evidence that defendant possessed the weapon and that he had the requisite intent to possess it.
In our discussion pertaining to defendant’s conviction on count three, we noted the substantial evidence linking defendant to Apartment 4-K at 650 Bellemeade. Just as defendant had constructive possession of the heroin found at the apartment, we also find that he had constructive possession of the firearm found at the apartment.
Defendant argues that the evidence presented failed to exclude every reasonable hypothesis of innocence with respect to the firearm charge. Specifically, he points out that the record shows that detectives never questioned previous tenants of the apartment about the gun; it was not established who, if anyone, had access to the apartment between the time of defendant’s arrest and the execution of the search *111 warrant; and it was not conclusively shown that a fingerprint on the gun matched that of defendant.
In State v. Captville, 448 So.2d 676 (La.1984), the Louisiana Supreme Court noted that a reviewing court does not determine whether another possible hypothesis has been suggested by defendant which could explain the events in an exculpatory fashion. Rather, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational juror could not “have found proof of guilt beyond a reasonable doubt.” Id.
|1fiIn the instant case, based on the evidence viewed in the light most favorable to the prosecution, we find that the jury’s verdict on count four was reasonable. With all other elements of the offense conceded as proven by the State, the evidence also showed that defendant had regular access to the apartment where the firearm was found. Although defendant suggests that another person could have planted the gun in the apartment or that a previous tenant may have left it there, no evidence has been provided to support these theories. Thus, the jury reasonably rejected defendant’s version of events and found that the elements of La. R.S. 14:95.1 were proven beyond a reasonable doubt. This assignment of error is without merit.
In his first counseled assignment of error and second pro se assignment of error, defendant argues that the trial court erred in denying his motion to suppress the evidence retrieved from the apartment. Defendant argues that the affidavit in support of the search warrant contained several factual inconsistencies, was deficient generally, and was based upon unreliable information. Conversely, the State asserts that the issuing judge had a substantial basis for concluding that probable cause existed, based upon the totality of the information provided.
In determining whether the trial court’s ruling on a defendant’s motion to suppress is correct, an appellate court is not limited to the evidence adduced at the suppression hearing but may also consider the evidence presented at trial. State v. Huntley, 08-125, p. 6 (La.App. 5 Cir. 5/27/08), 986 So.2d 792, 796. A trial court’s determination on the motion to suppress should not be disturbed on appeal, unless it is clearly wrong. State v. Addison, 08-461, p. 12 (La.App. 5 Cir. 2/10/09), 8 So.3d 707, 716.
Under La.C.Cr.P. art. 162, “[a] search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a 117credible person, reciting facts establishing the cause for issuance of the warrant.” This article requires that the facts establishing probable cause be recited in the affidavit because it is the judge, not the affiant, who must be satisfied as to the existence of probable cause. State v. Clement, 11-1150, p. 11 (La.App. 5 Cir. 9/11/12), 101 So.3d 460, 468, writ denied, 12-2214 (La.4/1/13), 110 So.3d 139. The facts establishing probable cause for the warrant must be contained within the four corners of the affidavit. State v. Green, 02-1022, p. 8 (La.12/4/02), 831 So.2d 962, 969.
In the present case, Detective Barteet’s affidavit, submitted in support of a search warrant for defendant’s apartment at 650 Bellemeade Boulevard, Apartment 4-K, provides that following an anonymous tip that specifically identified defendant by name, address and date of birth, the Jefferson Parish Sheriffs Office established surveillance of defendant for alleged distribution of heroin. The affidavit states that defendant had four convictions for violations relative to illegal nar- *112 cotíes possession and distribution. During surveillance, defendant was observed conducting a drug transaction; the buyer, Brook Franklin, was stopped and confirmed the sale of heroin to her by defendant. Defendant was subsequently arrested. On October 1, 2012, a reliable source of information told Detective Barteet that defendant was concealing a large sum of cash at his residence. During prior surveillance of defendant, agents had followed defendant to an apartment at 650 Belle-meade Boulevard in Gretna. A confidential source advised that defendant maintained a residence at that location. Based on the surveillance, the documented sale of heroin by defendant, as well as the information that he had hidden a large sum of money and the “totality of the investigation into Melancon’s distribution of heroin,” agents believed that defendant was concealing additional quantities of heroin and currency inside the residence. Agents confirmed | ^defendant’s residence at Apartment 4-K at 650 Bellemeade Boulevard. Finally, the affidavit provides that defendant’s car, identified by make, model, and license plate, was registered to the apartment; agents also confirmed that defendant had made monthly rent payments as well.
At the hearing on defendant’s motion to suppress, Detective Barteet admitted that there may have been a one day error in his affidavit which said that the hand to hand transaction took place on September 27, 2012, when it had, in fact, taken place on September 28, 2012. Also, Detective Barteet admitted that while he used the term “hand-to-hand transaction” in his affidavit, he did not actually witness a hand-to-hand transaction; rather, he saw evidence indicative of such a transaction. Detective Barteet testified that the person who purchased the drugs from defendant confirmed that it was a hand-to-hand transaction. With respect to the person who provided information that defendant had a large sum of currency in his apartment, Detective Barteet indicated in his affidavit that it was a reliable source.
At the conclusion of the hearing, the trial court denied defendant’s motion to suppress, finding that based on the affidavit in support of the search warrant, the magistrate had a substantial basis for concluding that probable cause existed for the issuance of the search warrant. We agree with the trial court.
Although there were some inconsistencies and incorrect statements in his affidavit, Detective Barteet confirmed that everything in his application for the search warrant was correct to the best of his knowledge. The information presented in the affidavit provided probable cause for the issuance of the search warrant. Based on the testimony and evidence presented, we find that the trial court did not err in denying defendant’s motion to suppress. This assignment of error is without merit.
|iaIn defendant’s fourth counseled assignment of error and first pro se assignment of error, he asserts that the trial court erred in denying his request for a mistrial. Defendant argues that Detective Barteet’s testimony that defendant instructed someone to remove drugs from the apartment “fatally tainted” the jury, and therefore, the trial court erred in failing to grant his motion for mistrial.
At trial, a recording of a phone call made by defendant while in jail was played for the jury. Thereafter, during cross-examination of Detective Barteet, the following exchange took place between defense counsel and Detective Barteet.
DEFENSE COUNSEL:
Okay. And you — you don’t know — you don’t know, of your own personal knowledge, and your investigation doesn’t *113 know who placed those people — those items in the apartment?
DET. BARTEET:
Well there — there’s a jail conversation. Obviously it’s not on there. That he speaks of something in the rice dish after we went in with a search warrant, and—
DEFENSE COUNSEL:
Now there’s nothing — there’s nothing— in the — in the phone calls that — that were—
DET. BARTEET:
There is something in the phone calls. It just might not be on that disc. You asked me my personal knowledge. I listened to a call where he talks to a female person about the police finding stuff in a rice dish. That’s where the largest bag of heroin was.
Immediately following Detective Bar-teet’s response, defense counsel requested a bench conference and objected to the testimony on the basis that he had never heard the telephone conversation that Detective Barteet was referring to. The Court stated:
THE COURT:
Well, you [defense counsel] asked him a question, and he answered — and he answered that he personally heard it, so it’s overruled. That doesn’t mean — the State said that they’re going to try and find that call by tomorrow for you, and I hope that that happens.
DEFENSE COUNSEL:
Okay.
Thereafter, defense counsel asked Detective Barteet whether he had heard defendant refer to drugs or a firearm in the telephone conversation played for the jury, to which Detective Barteet replied that he had not.
On the second day of trial, counsel for defendant stated that he had reviewed two phone call recordings of defendant and a “very close friend” and that these recordings were inconsistent with Detective Bar-teet’s testimony that defendant told.someone by phone to “remove the drugs from the rice.” The State replied that the tape in question had not yet been located and that it had not yet rested. The trial court denied the motion for a mistrial, noting that Detective Barteet’s comment about the phone call was brought out on cross-examination at the urging of defense counsel who asked Detective Barteet what evidence he had that defendant knew the drugs were in the apartment.
On' appeal, defendant argues that the trial court erred in denying his motion for mistrial. The law pertaining to motions for mistrial is set out in La.C.Cr.P. arts. 770 and 771. La.C.Cr.P. art. 770 provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
[[Image here]]
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
La.C.Cr.P. art. 771 states:
|21In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
*114 (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In State v. Kimble, 375 So.2d 924, 928 (La.1979), the Louisiana Supreme Court held that “the state cannot be charged with testimony elicited by defense counsel implying that defendant had previously committed other crimes and that defendant cannot claim reversible error on the basis of that evidence which is elicited.” This holding was reiterated by the court in State v. Tribbet, 415 So.2d 182, 184 (La.1982).
In State v. Lions, 624 So.2d 436 (La.App. 5 Cir.1993), this Court considered a similar issue of whether a DEA special agent’s response to defense counsel’s question on cross-examination was grounds for a mistrial. In that case, the defendant had been convicted of possession with intent to distribute heroin, cocaine, MDMA, marijuana and methamphetamine. During trial, Agent Johnson was asked by defense counsel, “Did he (Lions) give you a particular location where he had gotten the drugs?” Johnson replied, “Well, he said this guy, the Mexican would come to town, place a phone call to him, let him know he was in town, and then he would go and meet with the Mexican. At that time he would let him know the quantity of drugs that he needed.” Lions, 624 So.2d at 438. Defense |22counsel immediately moved for a mistrial saying that he was caught by surprise and that Johnson’s answer constituted impermissible evidence of other crimes; i.e., that Lions had an ongoing relationship with a Mexican drug supplier. Id. The trial judge denied the motion for a mistrial. On appeal, this Court found that the trial court did not err in denying the mistrial, noting that the Louisiana Supreme Court has generally recognized that a police officer’s unsolicited, unresponsive reference to another crime by the defendant is not the comment of a court official under Article 770. This Court further noted that absent a showing of a pattern of unresponsive answers or improper intent by the police officer or prosecutor such comments would not fall within the purview of Article 770. Lions, 624 So.2d at 438-439.
In the present case, because Detective Barteet is not a judge, district attorney, or a court official, his answer would not fall under the provisions of La. C.Cr.P. art. 770. Detective Barteet’s answer about his personal knowledge that defendant was aware of drugs in the apartment was made while he attempted to respond to defense counsel’s open-ended question. Defense counsel elicited the response. Moreover, we find that defendant failed to show that Detective Barteet’s answer was the result of any pattern of unresponsiveness or improper intent. We find no error in the trial court’s failure to grant a mistrial under La.C.Cr.P. arts. 770 or 771. Accordingly, this assignment of error is without merit.
In his third pro se assignment of error, defendant argues that the trial court erred by denying his motion to suppress where the police lacked reasonable suspicion and probable cause to arrest him. While defendant’s counseled brief challenges the trial court’s finding that the search warrant issued for defendant’s *115 apartment was supported by probable cause, in this pro se assignment, defendant lafurther challenges the warrant by also claiming that his arrest was initiated without reasonable suspicion or probable cause.
The record reveals that in defendant’s written motion to suppress, he did not brief the issue of whether there was reasonable suspicion to stop him or probable cause to arrest him. Furthermore, at the hearing on defendant’s motion to suppress, the validity of defendant’s arrest was not argued or considered by the trial court in making its ruling.
In State v. Dee, 09-712 (La.App. 5 Cir. 2/23/10), 34 So.3d 892, 901, writ denied, 10-705 (La.10/29/10), 48 So.3d 1097, this Court noted that where the defendant did not challenge his arrest as illegal in a motion to suppress and apparently raised the issue for the first time on appeal, the issue was not preserved. See also La.C.Cr. P. art. 841. Similarly, in State v. Johnson, 07-1040 (La.App. 4 Cir. 9/10/08), 993 So.2d 326, 331, writ denied, 08-2649 (La.6/5/09), 9 So.3d 868, the Fourth Circuit found that because defendant did not raise the issue of whether he was arrested without probable cause in the trial court, he was precluded from consideration of the issue for the first time on appeal.
In the instant case, because he failed to raise this issue in the trial court, defendant has waived any claim that he was detained without reasonable suspicion and arrested without probable cause. Nevertheless, even if the issue had been properly preserved for appellate review, we find it to be without merit. Based on the facts set forth in the record before us, there was reasonable suspicion to detain defendant and probable cause to arrest him. Defendant’s third pro se assignment of error is without merit.
| ^ERRORS PATENT
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following errors were noted.
First, defendant received an illegally lenient sentence. La. R.S. 14:95.1(B) provides for a mandatory fine of not less than one thousand dollars nor more than five thousand dollars. In this case, neither the commitment nor the transcript reflects the imposition of the mandatory fine required under the statute.
The Louisiana Supreme Court has held that an appellate court has the authority under La.C.Cr.P. art. 882 to correct an illegally lenient sentence at any time, even if the issue of an illegal sentence was not raised by the defendant or the State. State v. Campbell, 08-1226, p. 8 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, 1081, writ denied, 09-1385 (La.2/12/10), 27 So.3d 842. This authority is permissive rather than mandatory. State v. Horton, 09-250, p. 10 (La.App. 5 Cir. 10/27/09), 28 So.3d 370, 376. This Court has often declined to use its authority to remand cases for imposition of a mandatory fine when the defendant is indigent. See Horton, supra.
In the present case, defendant is represented by the Louisiana Appellate Project, which provides appellate legal services for indigent criminal defendants in non-capital felony cases. Due to defendant’s indigent status, we decline to remand this matter for imposition of the mandatory fine.
Next, we note that the State of Louisiana Uniform Commitment Order reflects that the date of all of the offenses was September 28, 2012; however, the bill, of information reflects that the date of the offense for count four was actually October 1, 2012. In addition, the Uniform Commitment Order indicates that the “Adjudica *116 tion Date” for the offenses was December 16, 2013, when it was, in fact, | ^December 5, 2013. Accordingly, we remand the matter and order the trial court to correct the Uniform Commitment Order to reflect the correct dates and direct the clerk of court to transmit the original of the Uniform Commitment Order to the officer in charge of the institution to which defendant has been. sentenced and the Department of Correction’s legal department. See La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846 (per curiam); State v. Long, 12-184, pp. 10-11 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142.

DECREE

For the foregoing reasons, we affirm defendant’s convictions and sentences. We also remand the matter and order the trial court to correct the Uniform Commitment Order and direct the clerk of court to transmit the original of the Uniform Commitment Order to the officer in charge o.f the institution to which defendant has been sentenced and the Department of Corrections’ legal department.

CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER.

. Brook Franklin and Katherine Mullins were charged in count one of the bill of informa-don with possession of heroin, a violation of La. R.S. 40:966(C).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Detective Barteet testified that inositol is a powder typically "used in the cutting procedure of narcotics” which allows the seller to "make a larger quantity."

.Detective Barteet stated that a blender is often used to help with the cutting process and preparation of heroin.

. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La. 1992).