STATE OF LOUISIANA

VERSUS

JEROME HULBERT

NO. 24-KA-208

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-6388, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING

February 26, 2025

**STEPHEN J. WINDHORST
JUDGE**

Panel composed of Judges Susan M. Chehardy,
Stephen J. Windhorst, and Scott U. Schlegel

**CONVICTIONS AND SENTENCES AFFIRMED;
REMANDED FOR CORRECTION OF UCO**
 **SJW**
 **SMC**
 **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
JEROME HULBERT
Bertha M. Hillman

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Paul D. Connick, Jr.
Thomas J. Butler
Monique D. Nolan
Joan Benge
Joseph E. Lucore

**WINDHORST, J.**

Defendant/appellant, Jerome Hulbert, appeals his sentence for his convictions of third degree rape upon a known juvenile (count one) and molestation of a juvenile (count two). We affirm defendant's convictions and sentences.

## PROCEDURAL HISTORY

On January 12, 2022, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jerome Hulbert, with third degree rape upon a known juvenile ("DOB 6/26/07") in violation of La. R.S. 14:43 (count one) and molestation of a juvenile ("DOB 6/26/07") in violation of La. R.S. 14:81.2 B(2) (count two). The State alleged that the crimes occurred on or between June 7, 2021 and October 5, 2021. At his arraignment, defendant pled not guilty. After a bench trial in November 2023, the trial court found defendant guilty as charged on both counts.

In January 2024, defendant filed post-trial motions, including a motion for arrest of judgment, a motion for new trial and a motion for acquittal notwithstanding the verdict, all of which the trial court denied. The trial court sentenced defendant to twenty-five years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence as to count one. As to count two, the trial court sentenced defendant to ten years imprisonment at hard labor and ordered the sentence to run concurrently with the sentence in count one.

At sentencing, defendant orally asked the trial court to reconsider the sentence, but the trial court denied the motion. Defendant filed a written motion for appeal on January 19, 2024, which the trial court granted.

## EVIDENCE

The victim in this case, O.R., (referred to herein as the "victim" or "O.R.") first disclosed defendant's sexual abuse when she found out she was pregnant at Tulane Lakeside Hospital. Stillwell Russell, formerly with the Department of

Children and Family Services (DCFS), investigated O.R.'s allegations against defendant, who is the victim's grandfather. Mr. Russell explained that after O.R. disclosed defendant's sexual abuse, O.R. underwent a forensic interview at the Child Advocacy Center (CAC). Aubrey Ziegler, a forensic interviewer, conducted the interview of O.R. on October 7, 2021[1] with Mr. Russell and Detective Stephen Bowman present.

During the interview, O.R. stated that she went to the hospital because she was having stomach pain and had missed multiple menstrual cycles. At the hospital, she learned she was pregnant. O.R. informed Ms. Ziegler, "I was touched by my grandpa." O.R. explained that defendant would go to her house and watch her and her siblings while her mother was at work. She stated that defendant touched her body more than one time when she was sleeping. The first time it happened, her mother was gone, and defendant came into her room while she slept. He touched her thighs, arms, breasts, and stomach. She stated that another time while she was sleeping, defendant came into her room and got on top of her with his bottoms pulled down. He started to touch her and then he moved her shorts to the side and put his "private part" into her "private part." She pushed him off, but he got back on top of her again. O.R. cried herself to sleep after these incidents. She told Ms. Ziegler defendant had intercourse with her more than twice, and the last time it happened was on the previous Sunday. O.R. explained that the first time it happened she had just turned thirteen when her mother moved into her "big house" in Westwego. Ms. Ziegler asked O.R. how she got pregnant, and she replied, "from her grandpa." Ms. Ziegler also asked how she knew it was her grandpa, and O.R. replied because she had never had sex in her entire life.

---

[1] The State introduced the video of the CAC interview into evidence.

Mr. Russell testified that the first time he got in contact with defendant, defendant admitted he had "messed up". Defendant eventually contacted Mr. Russell again, asking to meet at a "neutral place." At the meeting, defendant told Mr. Russell he had "messed up" and "fooled around" with O.R., but maintained he did not have intercourse with her and refused to elaborate further.

Detective Stephen Bowman, of the Special Victims Section of the Jefferson Parish Sheriff's Office (JPSO), investigated the sexual abuse charges against defendant. Detective Bowman testified that he showed O.R. a photograph of defendant, and she identified him as the person who raped and impregnated her. Detective Bowman testified that O.R.'s mother showed him text messages between her and defendant, and between O.R. and defendant, in which defendant admitted he had sexual contact with O.R. Detective Bowman took photos of the text messages and logged them into evidence.

Detective Bowman also testified that a DNA analysis of defendant's DNA and the baby's DNA revealed that defendant "was a hundred billion times more likely to be the father of [the conceived child] and the probability was 99.999 percent relative over any other randomly selected male."

Detective Bowman also testified regarding phone calls at the Jefferson Parish Correctional Center during which defendant admitted he was not totally innocent, he should not have allowed this to happen, and he should have stopped it when it started. During a call, defendant stated if the DNA testing was conclusive, he would pay restitution and child support to "her," because neither "she" nor "her mama" should have to carry the burden of "me and her" doing things we should not have been doing.[2]

---

[2] Detective Bowman explained that the calls were connected to defendant by his unique inmate number.

O.R. testified that she lived with her grandmother in New Orleans from a "young" age until she was approximately thirteen years old. She explained that she considered defendant her grandfather but he was not married to her grandmother. For a period of time, she lived on West Laverne with her grandmother, mother, aunt, and four brothers. O.R. testified that when her mother went to work, defendant would often babysit her and her brothers. O.R. testified that while living with her grandmother, defendant, on multiple occasions, would touch her "all over" her clothes and on her breasts and buttocks. She testified that she asked him to stop touching her, but he would tell her it was going to be okay.

O.R. testified that she also lived with her grandmother on Manzant Street. Defendant would come over to the house on Manzant Street to fix things. O.R. stated that, while living on Manzant Street, defendant would touch her over and under her clothes, and on her breasts and buttocks.

O.R. testified that she also lived at an apartment on Garden Oaks with her mother, brothers, and defendant. She stated that defendant had intercourse with her for the first time at this apartment when she was thirteen. O.R. explained that when her mother went to work, she would go to sleep in her mother's room. While she was sleeping, defendant came in and got on top of her. Although she tried to push him off, he forced his way on top of her and had intercourse with her. O.R. testified that defendant also touched her breasts over and under her clothes while they lived in the Garden Oaks apartment.

O.R. later lived on Paula Street in Westwego with her mother, four brothers, and defendant. She testified that defendant touched her under and over her clothes on various occasions. O.R. testified that on one occasion, when her mom was not home, defendant put his mouth on her "private part" and that his tongue went inside. O.R. testified that defendant had sexual intercourse with her at this house three to four times, and that she did not consent to defendant's actions.

O.R. testified that on October 5, 2021, the day she learned she was pregnant, she communicated with defendant through text messages. She called him a liar because he was trying to manipulate her into thinking that she did something wrong. She also testified that defendant texted her and told her that her mother did not love her and that her grandmother did not believe her.

**LAW and ANALYSIS**

In his sole assignment of error, defendant argues that his sentence of twenty-five years for third degree rape is constitutionally excessive.[3] Defendant asserts the trial court did not adequately consider 16 of the 20 aggravating circumstances in La. C.Cr.P. art. 894.1, which do not apply to him. Defendant contends that while his sentence is within the statutory limits, there were not sufficient aggravating circumstances to warrant "such a severe sentence."

In response, the State asserts the testimony and evidence presented at trial established that defendant, who was the victim's grandfather, exploited his position of trust when he raped and molested his granddaughter while in his care. The State argues that O.R. did not consent to having intercourse with defendant. The State contends that defendant is the worst type of offender, as he admitted in the jailhouse calls and text messages that he "messed up," he claimed O.R. was a willing participant, and his actions resulted in his granddaughter becoming a teenage mother to his child. The State points out that defendant denies having sexual intercourse with O.R., yet a DNA test revealed a 99.9% probability of paternity to the child.

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. State v. Calloway, 19-335 (La. App. 5 Cir. 12/30/19), 286 So.3d 1275, 1279, writ denied, 20-266 (La. 7/24/20), 299 So.3d 69. A sentence is considered excessive, even if it

---

[3] Defendant does not challenge his sentence for his conviction of molestation of a juvenile.

is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering.  State v. Woods, 18-413 (La. App. 5 Cir. 12/19/18), 262 So.3d 455, 460.

In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. Calloway, 286 So.3d at 1279. The trial judge is afforded broad discretion in sentencing, and a reviewing court may not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4 D. The relevant question on appeal is whether the trial court abused its broad sentencing discretion not whether another sentence might have been more appropriate.  See State v. Dixon, 19-7 (La. App. 5 Cir. 12/30/19), 289 So.3d 170, 174, writ denied, 20-143 (La. 7/17/20), 298 So.3d 176.  The sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Hankton, 20-388 (La. App. 5 Cir. 7/3/21), 325 So.3d 616, 623, writ denied, 21-1128 (La. 12/7/21), 328 So.3d 425.

In reviewing a trial court's sentencing discretion, three factors are considered: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. Woods, 262 So.3d at 460-61; State v. Allen, 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 880. However, there is no requirement that specific matters be given any particular weight at sentencing.  State v. Tracy, 02-227 (La. App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied, 02-2900 (La. 4/4/03), 840 So.2d 1213.  Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender.  State v. Dixon, 17-422 (La. App. 5 Cir. 3/14/18), 241 So.3d 514, 523, writ denied, 18-542 (La. 2/11/19), 263 So.3d 415.

In sentencing defendant, the trial court expressly considered that the nature of the crime involved sexual intercourse without the victim's consent, that the crime involved defendant's nonconsensual relationship with his young granddaughter, and that the victim stated she pushed defendant off of her but he forced his way back on top of her. The trial court also found defendant's conduct manifested deliberate cruelty to the victim, that he was in need of correctional treatment in an institution, and that the mitigating factors did not outweigh the aggravating factors. In imposing the 25- year maximum sentence for third degree rape on defendant, the trial court expressly referred to the relationship between defendant and his granddaughter, their history, and the act itself.

In reviewing the sentence, we first consider the nature of defendant's crime against his own granddaughter. We find definitive support for the trial court's imposition of the maximum sentence. The victim's mother often left her in defendant's care, and defendant exploited the trust his daughter and granddaughter had in him. According to the victim's testimony, defendant was babysitting her and her brothers while her mother worked overnight, when defendant entered her room while she was sleeping and raped her in her own bed. Defendant also took advantage of the victim's vulnerable nature at a young age despite the victim's efforts to push him off of her. The egregiousness of the instant matter is magnified given that defendant not only raped his biological granddaughter but also impregnated her. A DNA test revealed a 99.9% probability that defendant was the father of O.R.'s child.

Second, although defendant did not have any previous criminal history, the record indicates that the sexual abuse in this case occurred over an extended period of time. Despite that the victim had defendant's child, he continued to deny raping her in text messages to his daughter and the victim. Moreover, during a jailhouse call, defendant insinuated that the young victim at some point began to willingly participate. Further appalling is that defendant in text messages to his granddaughter

attempted to blame her by telling her people did not trust her and that she willingly participated.

Third, we conclude that defendant's sentence is not excessive based on sentences imposed for similar crimes by this court and other courts. "Although a comparison of sentences imposed for similar crimes may provide guidance, 'It is well settled that sentences must be individualized to the particular offender and to the particular offense committed.'" State v. Boudreaux, 11-1345 (La. App. 4 Cir. 7/25/12), 98 So.3d 881, 891, writ denied, 12-1907 (La. 11/9/12), 100 So.3d 841.

The Louisiana Fourth Circuit found a 25-year sentence for simple rape was not excessive in State v. Jones, 15-123 (La. App. 4 Cir. 12/2/15), 182 So.3d 251, 270, writ denied, 16-27 (La. 12/5/16), 210 So.3d 810. In that case, defendant had also previously abused the victim. In addition, the victim had severe and lingering emotional scars from the abuse, which were evident from the victim's impact statement. Id. at 272-74.

The Louisiana Third Circuit affirmed a 25-year sentence for simple rape in State v. Green, 16-938 (La. App. 3 Cir. 7/19/17), 248 So.3d 360, 384, writ denied, 17-1348 (La. 4/27/18), 239 So.3d 836. The Green case involved a 49-year-old defendant who took advantage of an extremely vulnerable 17-year-old victim, a co-worker who had passed out from alcohol he offered her. Id. at 391. The trial court had pointed out in its reasons for sentencing that the defendant had caused bruising on the victim during the offense. Id. at 390. The trial court also found there was an undue risk that the defendant would commit another offense because of his criminal history. Id. at 388.

Although defendant argues that the trial court did not adequately consider the factors of La. C.Cr.P. art. 894.1, the record reflects that the trial court stated it considered various factors, including mitigating factors, and found that they did not outweigh the aggravating factors. Considering the egregious nature of defendant's

conduct, we do not find the maximum sentence unconstitutionally excessive in this case. Not only did defendant exploit a position of trust, as both grandfather and babysitter to the victim, but he impregnated her. The victim, her mother, and her baby will undoubtedly suffer lasting mental and emotional trauma and scars. Also significant is defendant's lack of remorse and responsibility for his actions.

Accordingly, we find the trial court did not abuse its discretion by imposing the 25-year maximum sentence for defendant's conviction of third degree rape.

**ERRORS PATENT**

The record was reviewed for errors patent according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990).

*Uniform Commitment Order (UCO) - Incorrect Adjudication Date*

On the UCO, the adjudication date for the offense is stated to be January 11, 2024. The record, however, indicates defendant was found guilty on November 29, 2023. Thus, the UCO should be amended to correctly reflect the adjudication date as November 29, 2023. We therefore remand this case for the trial court to correct the UCO to reflect the true adjudication date and direct the clerk of court to transmit the original of the UCO to the officer in charge of the institution to which defendant has been sentenced and the Department of Correction's legal department. La. C.Cr.P. art. 892 B(2); State v. Melancon, 14-221 (La. App. 5 Cir. 9/24/14), 151 So.3d 100, 116, writ denied, 14-2161 (La. 5/22/15), 170 So.3d 982.

*Post-Conviction Relief Notification*

The transcript does not reflect that the trial court informed defendant of the period for seeking post-conviction relief.[4] An appellate court may advise defendant of the period for seeking post-conviction relief as set forth in La. C.Cr.P. art. 930.8

---

[4] When a discrepancy exists between the transcript and the minute entry, the transcript must prevail. State v. Lynch, 441 So.2d 732, 734 (La. 1983).

in its opinion.  <u>State v. Lewis</u>, 24-24 (La. App. 5 Cir. 12/4/24), — So.3d —. Accordingly, by way of this opinion, we inform defendant that no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.

**DECREE**

Considering the above, we affirm defendant's convictions and sentences.  We remand this case to the trial court to correct the Uniform Commitment Order and direct the clerk of court to transmit the original of the Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections' legal department.

**CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF UCO**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**FEBRUARY 26, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 24-KA-208

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
BERTHA M. HILLMAN (APPELLANT)      CHRISTOPHER A. ABERLE (APPELLANT)      MONIQUE D. NOLAN (APPELLEE)
THOMAS J. BUTLER (APPELLEE)

### MAILED
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
JOAN BENGE (APPELLEE)
JOSEPH E. LUCORE (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053